RICHARD W. ADAMS, plaintiff in error, vs. EMILY B. GUE-RARD, and others, defendants in error.

[1.] Before our Act of 1821, making every estate one in fee, unless some less estate be expressed by limiting words, a marriage settlement conveyed the entire legal estate in real and personal property to a trustee, and declared a trust in favor of the husband and wife during the life of the longest liver of them, with remainder to their children, without using words to expressly confine the remainder, to a life estate, or to expressly extend it to a fee.

*Held,* That any resulting trust after the death of the children, was rebutted by a subsequent deed taken by the same parties, professing to follow the very same trusts expressed in the marriage settlement, and in doing so, expressing a trust in favor of the husband and wife during the life of the longest liver, with remainder to the children and their *heirs.*

[2.] Possession under another, is adverse to everybody but that other under whom it is held.

[3.] Courts of Equity will not relieve from the bar of the statute of limitations, where a party has remained inactive from ignorance of his rights, nor do they relieve from the bar, unless the subject matter was pending in some Court before the bar attached.

[4.] When one conveyance to a trustee, directs him to make another of the same kind to a third person, equity will dispense with the second conveyance, if the first will produce precisely the same *result,* operating as a conveyance under the statute of uses.

In Equity, in Chatham Superior Court. Before Judge FLEMING, June Term, 1859.

This was a bill in equity, by Richard W. Adams, against Emily B. Guerard, and others, devisees and heirs at law of Robert G. Guerard, deceased, praying for a discovery, relief, and account.

The bill states, that on the 30th January, 1840, in contemplation of a marriage, about to be solemnized between complainant and Mary Emma Guerard, a marriage settlement was executed by and between them, and one Robert G. Guerard as trustee, by which certain real and personal property in which the said Mary Emma had a vested estate in remainder, after the termination of a life estate, (created by two deeds, one a marriage settlement between Peter Guerard

and Elizabeth Haist, the father and mother of said Mary Emma, the other a deed made by William Parker, to Steel White, trustee,) was conveyed to said Robert G. Guerard as trustee, to hold the same in trust "for the joint benefit and behoof of the said Mary Emma and Richard W., during their coverture, (not subject however to the debts, contracts or engagements of the said Richard W.) and for the benefit and behoof of the survivor of them, for and during the term of his or her natural life; and from and after the death of the survivor of the said Mary Emma and Richard W., then in further trust to convey the said real and personal estate to the issue of the said marriage, share and share alike, if more than one, his, her or their heirs and assigns forever, as tenants in common, free from any trust; but if either the said Mary Emma or Richard W., shall die without leaving issue of the said marriage, living at the time of such death, then in trust, to convey the said real and personal estate to the survivor of the said Mary Emma and Richard W. Adams, her or his heirs and assigns, free from any trust, and for no other use, trust or benefit whatsoever," &c. Copies of said marriage settlement, and also of the marriage settlement between said Peter Guerard and Elizabeth Haist, and of the deed from William Parker, (by which two latter deeds, the estate in remainder to said Mary Emma, was created,) are appended below, marked A. B. and C.

The bill further states, that the property conveyed in said marriage settlement, consisted of an undivided third part of the real and personal estate mentioned in said deed of marriage settlement between Peter Guerard and Elizabeth Haist, and in the deed from Parker; the said Robert G. Guerard and one Augustus Guerard, the brother of the said Mary Emma, being entitled to the other two-thirds in and under said deeds; the limitations in said deeds being to the children of the said Peter and Elizabeth, and in all of which property the said Peter at the time of the execution of the

deed of marriage settlement aforesaid, between complainant and the said Mary Emma, possessed an estate for life.

The bill further alleges, that the said Robert G. Guerard accepted the trusts in said deed of marriage settlement, and that he never afterwards renounced or was discharged from the same.

The bill further states, that the said Mary Emma and complainant were married the day after the execution of said marriage settlement, and that the said Mary Emma died on the 31st day of October, thereafter, (1840,) without issue, and leaving complainant surviving; and that thereupon, it became the duty of said Robert G. Guerard, as trustee, in accordance with the provisions of said marriage settlement, forthwith to convey absolutely to complainant the whole estate which had been conveyed in trust as aforesaid by said deed of settlement.

The bill further states, that the said Peter Guerard, tenant for life as aforesaid, died on the 25th December, 1842, when the right to the enjoyment and possession of said estate in remainder accrued, and it became the duty of said Robert G. trustee as aforesaid, to convey absolutely to complainant the one-third part of said estate, but which he failed and neglected to do. But upon the death of the said Peter, the said Robert G. took possession of the whole of said real and personal estate, held by said Peter for life, and collected and received from time to time, the rents, issues, and profits thereof, until the 26th October, 1853, when he died. And upon his death, the said Emily B. Guerard, his widow, and only qualified executrix, possessed herself of all said real and personal estate, and has continued in the receipt of the rents, issues and profits thereof, ever since, and the said estate is now in possession of the devisees, and heirs of said Robert G. Guerard, deceased.

The bill prays for a conveyance of one-third of said estate, real and personal, to complainant, and that defendants be

decreed to account to and with him, for one-third of the rents, income and profits thereof.

The answer of defendants admits the facts stated in the bill as to the marriage of complainant and the said Mary Emma Guerard, and the execution of the deed of marriage settlement between them, and the marriage settlement between Peter Guerard and Elizabeth Haist, and the deed of Parker, as stated in the bill.

The answer further alleges, that after the death of the said Peter Guerard, the said Robert G. took and retained possession of the property, which the said Peter held, as tenant for life, in his individual right, conjointly with his brother, Augustus Guerard; and that the said Robert G. and Augustus, were the only surviving children of said Peter and Elizabeth, at the time of his, Peter's, death; and defendants deny that said Robert G. ever held said property as trustee, under said deed, or as part property, to which complainant had any right or title.

The defendants in their answer, further allege, that complainant with full knowledge of the claim of said Robert G., and of his disclaimer of any trust in connection with his possession of said property, acquiesced therein, and never asserted any title, interest, or claim in or to the same, from the time it came into the possession of said Robert G. until shortly before the filing of his bill.

Defendants plead lapse of time, and the statute of limitations as a bar to complainant's claim or title.

Defendants further say, that after the death of said Peter, Robert W. Pooler, was appointed trustee of said property, and at the May Term, 1843, of the Superior Court of Chatham county, the said Robert G. and Augustus Guerard, filed their bill on the equity side of said Court, against the said Pooler, alleging that they were the only surviving children of said Peter and Elizabeth, and entitled to all of said property, and praying that the same might be conveyed and delivered to them by said Robert W. Pooler, trustee as afore-

said; that a decree was passed, and a conveyance made to them by Pooler, of all said property in fee, as tenants in common, and that said deed was immediately recorded in the proper office. And that it was thus that said Robert G. and Augustus, took possession of said property, claiming it as their own.

They admit that complainant requested them to convey and deliver to him the property, and to account for the rents and profits thereof, as stated in the bill, and that they declined so to do, and deny his right to said property, or to call defendants to any account touching the same.

The cause was submitted to the jury upon the pleadings, proofs and charge of the Court.

### Evidence for complainant.

*Thomas Purse,* testified: That the real property in Derby ward, mentioned in the bill, to-wit: Lot of land number five, in Wilmington Tything, with the improvements, was valued in the year 1845, by the city assessors at $12,000, there being on said lot two-story buildings, a third story having been afterwards put on one of the buildings; that the same valuation was put on said property in 1850; that in 1854, it was valued at $30,000, and that such was the present valuation; that from the year 1845 to the year 1850, the real property in Columbia ward, mentioned in the pleadings, with the improvements, was valued at $9,000, and that in 1854, the valuation was $12,500, that in 1857 and 1859, the valuation was $12,000, and that he thought the annual rent of last mentioned property was worth $700, and that the improvements on this property were there before 1843.

On the cross-examination, he stated: That he thought the foregoing valuations were full high; one of the objects of the valuation being to have the burden of taxation on real estate bear equally on each owner, in proportion to the relative value of his property.

*William H. Gladding*, City Treasurer, sworn: Testified to the genuineness of the books produced by him, as the books in which were entered the assessments and the names in which the returns were made from the year 1843 to the year 1858, inclusive; and that by these books, it appeared that in 1843, all said property was returned as the property of estate of Peter Guerard, by Robert W. Pooler, trustee, the Derby ward property being valued at $10,000, and the Columbia ward property at $8,000; that in 1850, the property was returned as that of estate of Peter Guerard, by R. G. Guerard, the Derby ward property being valued at $12,000, and the Columbia ward property at $9,000; that in 1857, the Derby ward property was returned as that of estate of Peter Guerard, and that in Columbia ward as the property of Mrs. E. B. Guerard; that in 1852, the property was returned by R. G. Guerard as property of the estate of Guerard; that in Derby ward valued at $15,000, and that in Columbia ward at $9,000; that in 1845, the property was returned by R. G. Guerard as that of estate of Guerard; $12,000 being the valuation of the Derby ward property, and $9,000 that of the Columbia ward property; that in 1849, the property was returned by R. G. Guerard as that of the estate of Guerard; the valuation being the same as that of 1845; that in 1855, the property in Derby ward was returned by Mrs. E. B. Guerard as that of estate of Peter Guerard, valuation $30,000, and the Columbia ward property was returned as hers, valuation $12,500.   This witness stated, also, that on examining the books, he did not find that Robert G. Guerard ever returned the property as his own.

The county tax-digest for the year 1849, offered in evidence by complainant, showed that the Columbia ward property was returned that year by R. G. Guerard, as the property of the estate of Guerard.

Complainant's cause being here closed, defendants offered *William F. Law, Esq.*, as a witness, who testified that he had

a conversation with Mr. Richard W. Adams in the spring of 1843, shortly after the death of Mr. Peter Guerard. Mr. Adams asked witness his opinion if he, Adams, had any rights to the property under his marriage settlement. It was a street conversation. I told him I could give no opinion without seeing the papers. He said he could get copies of the papers at the Court-house. He spoke of what he deemed his rights. Witness told him to get his papers and come to the office for an opinion (meaning the law office of William and William F. Law). That he did subsequently come to the office, when, as witness believes, Mr. R. G. Guerard was in the office; witness is almost sure that Guerard was there when Adams called at the office, for witness's desk was near the door, and he had a strong impression, that seeing Mr. Adams approach, witness met him at the door and stopped him; he can only account for this from the fact that Guerard was in the office at the time; witness then stated to Mr. Adams that he could not get an opinion from the office, as it had been previously retained by Mr. Guerard who was then receiving an opinion; I had a subsequent conversation with Mr. Adams; he told me he understood he had no rights, and had abandoned the matter. He said he had taken no legal advice; that he had learned from Robert Guerard, that he, Adams, had no rights to the property.

On the cross-examination, the witness states that the first conversation he had with Adams was a street conversation; and whilst he believes that Adams referred to and stated the trusts of the marriage settlement, yet at this time (the time of testifying) witness cannot remember what those trusts were, it having been a long time since that conversation. Witness cannot state the precise language of Adams; he told me Mr. Peter Guerard was dead, and that if he (Adams) had any rights, he wished me to investigate them for him.

*William P. White, Esq.*, being also sworn on behalf of the defendants, testified as follows: Had a conversation with Ad-

ams in reference to his claim under marriage settlement; it was a long time ago; does not recollect the date; thinks it was after Mr. Peter Guerard's death; it occurred in the street, near the Pulaski House; Adams said he was poor, and if he had any rights he wanted them, otherwise not; witness told him he did not know if he had rights, but advised him to see Major Guerard, who was an honorable man and would do what was right; witness afterwards saw Mr. Guerard, who told witness he had taken legal advice, and that he wished Mr. Adams to do the same; Major Guerard claimed the property, and denied that Mr. Adams had any right to it; witness thinks he subsequently communicated this conversation to Adams; he is pretty sure he did so; Major Guerard denied any right of Adams, and Adams knew it; there can be no doubt that Guerard set up adverse claim, and that Adams knew it.

The evidence being closed on both sides, and argument had, complainant's counsel requested the Court, in writing, amongst other thing, to instruct the jury:

That the deed of marriage settlement between Peter Guerard and Elizabeth Haist, (a copy of which is exhibited to said bill of complaint,) conveyed to their children a remainder in fee as to all the property embraced in it—which remainder vested as said children severally came in esse.

That the marriage settlement of Mary Emma Guerard, (a copy of which is also exhibited to said bill of complaint,) conveyed, to her trustee therein named, all the rights of said Mary Emma, at law, in and to the interest of the property embraced in said settlement, upon executory trust to convey the same to complainant under the contingencies which afterwards happened, to-wit, the death of the said Mary Emma (living the said complainant,) without leaving issue of their marriage living at the time of her death.

That it was the duty of such trustee, at the death of said Mary Emma, to convey said interest to complainant; and

that his failure to do so then or at the death of the life-tenant, Peter Guerard, was a breach of trust.

That the obligation or contract of the said trustee, under his hand and seal, was a covenant, and his failure to perform it was a breach of covenant.

That the complainant's suit was founded on the trust deed; it was brought to enforce the trust; that whatever rights complainant had, they grew out of the deed; and that if this were a case wherein the statute of limitations would be applicable, the bar prescribed for sealed instruments would be the bar alone available for the defendants.

That complainant's appropriate, peculiar and only remedy, if he ever had or then had any, was in a Court of Equity.

That this being the case of a direct trust, executory in its character, and cognizable only in equity, the statute of limitations could apply to it only by analogy in its application to legal rights, and that the legal remedy for breach of a covenant or obligation under the hand and seal of the party, would not be barred under twenty years after the right or cause of action accrued.

That even if complainant had a legal remedy, and the statute of limitations applicable to it was the statute applicable to suits for the recovery of real and personal property, yet the trustee's denial or repudiation of the trust, to admit the running of the statute in favor of the trustee, must be open and must be brought home to the knowledge of the party in interest; and that these rules apply as well to persons claiming under or through a trustee, (and not being *bona fide* purchasers for a valuable consideration without notice) as to the trustee himself; and that the burden of proof is on the trustee and those claiming under him, as volunteers, or with notice of the trust.

That if the jury should find, from admissions in the pleadings, or other evidence in the cause, that the claim of the trustee in this case was founded in mistake or misapprehension of the rights of the complainant, then neither the statute

of limitations nor the rule of Courts of Equity in analogy thereto, would operate against complainant, until the discovery of such mistake; and, the more especially, if the mistake was mutual; and that a possession which is the result of ignorance, inadvertence, misapprehension or mistake, will not work a disseisin.

That there can be no dissesin of a trust; and although a trust may be extinguished by lapse of time, yet a Court of Equity, acting in analogy to the rule of law, will not bar a trust, where, if there had been a legal remedy, the statutory bar would not apply at law.

That the confidential relation between trustee and *cestui que trust*, requires the former to give notice to the latter of every act or fact adverse to the interests of the *cestui que trust ;* and, especially, where the interests of the trustee and *cestui que trust* conflict.

Whereupon, amongst other things, the said Judge charged the jury that, previously to the year 1821, words of inheritance were necessary, in Georgia, to create a fee simple as well in equitable as in legal estates; that under the marriage settlement of Peter Guerard and Elizabeth Haist, the children of the marriage did not take estates in fee simple, but only estates for life, in the real property. To which charge or instruction complainant by his counsel excepted.

The Court further charged the jury, that as between the complainant in this case and said Robert G. Guerard, his trustee, the statute of limitations was applicable and sufficient to bar complainant's remedy, if knowledge was brought home to complainant that his trustee was holding adversely to him. To which charge or instruction complainant by his counsel excepted.

The Court further charged the jury, that a mistake or misapprehension *of law* by a trustee and *cestui que trust*, as to their respective rights, would not be sufficient to relieve the *cestui que trust* from the operation of the statute of limitations against him ; that if a mistake could avail the *cestui*

*que trust*, it must be a mistake of *fact* and not of law. To which charge or instruction complainant by his counsel excepted.

The Court further charged the jury, that if they found that complainant in this case had knowledge of the adverse holding of his trustee, then the statutory bar applicable to the case would not be the bar of twenty years prescribed for sealed instruments, but the bar of seven years as to the realty and four years as to the personalty. To which charge or instruction complainant by his counsel excepted.

The Court further charged the jury, that Courts of Equity will apply the bar of the statute of limitations, as at law, to the rights of a complainant, although the complainant might have had no remedy at law. To which charge or instruction complainant by his counsel excepted.

The jury retired and returned with a decree for the defendants, and that complainant's bill be dismissed with costs. The said Court, then, to-wit, on the 8th day June, in said year 1859, adjourned for the Term.

Whereupon, counsel for complainant tender this the said complainant's bill of exceptions to said charges, and the omissions to charge as requested in writing as aforesaid, and to said instructions and decree, and say :

1st. That the Court erred in charging the jury, that the children of Peter Guerard and Elizabeth Haist did not, under the said marriage settlement of said Peter and Elizabeth, take estates in fee simple, 'but only estates for life in the real property.

2d. That the Court erred in charging the jury that, as between the complainant in this case and his trustee, the said Robert G. Guerard, the statute of limitations was applicable and sufficient to bar complainant's remedy, if knowledge was brought home to said complainant that his said trustee was holding adversely to him.

3d. That the Court erred in charging the jury, that a mistake or misapprehension of law by a trustee and *cestui que*

*trust*, as to their respective rights, would not be sufficient to relieve the *cestui que trust* from the operation of the statute of limitations; that if a mistake could avail the *cestui que trust*, it must be a mistake of fact and not of law; and that the Court further erred in omitting to charge the jury, as requested, that if they should find, from admissions in the pleadings, or other evidence in the cause, that the claim of the trustee in this case was founded in mistake or misapprehension of the rights of the complainant, then neither the statute of limitations nor the rule of Courts of Equity in analogy thereto, would operate against complainant until the discovery of such mistake, and, the more especially, if the mistake was mutual, and that a possession which is the result of ignorance, inadvertence, misapprehension or mistake, will not work a disseisin.

4th. That the Court erred in charging the jury, that if they found that complainant in this case had knowledge of the adverse holding of his trustee, then the statutory bar applicable to the case would not be the bar of twenty years prescribed for sealed instruments, but the bar of seven years as to the realty and four years as to the personalty; and that the Court further erred in omitting to charge the jury, as requested, that complainant's suit was founded on the trust deed, it was brought to enforce the trust, that whatever rights complainant had, they grew out of the deed, and that if this were a case wherein the statute of limitations would be applicable, the bar prescribed for sealed instruments would be the bar alone available for the defendants.

5th. That the Court erred in charging the jury, that Courts of Equity will apply the bar of the statute of limitations, as at law, to the rights of a complainant, although the complainant might have no remedy at law; and that the Court further erred in omitting to charge the jury, as requested, that complainant's appropriate, peculiar and only remedy, if he ever had or then had any, was in a Court of Equity, and that this being the case of a direct trust, executory in its charac

ter, and cognizable only in equity, the statute of limitations could apply to it only by analogy in its application to legal rights, and that the legal remedy for breach of a covenant or obligation under the hand and seal of the party, would not be barred under twenty years after the right or cause of action accrued.

6th. That the Court erred in omitting to charge the jury, as requested, that the obligation or contract of the said trustee, under his hand and seal, was a covenant, and his failure to perform it was a breach of covenant; that it was the duty of such trustee, at the death of said Mary Emma, to convey to complainant all the interest or property embraced in her marriage settlement, and that the failure of said trustee to do so then or at the death of the life tenant, Peter Guerard, was a breach of trust.

7th. That the Court erred in omitting to charge the jury, as requested, that there can be no disseisin of a trust, and, although a trust may be extinguished by lapse of time, yet a Court of Equity, acting in analogy to the rule of law, will not bar a trust where, if there had been a legal remedy, the statutory bar would not apply at law.

8th. That the Court erred in omitting to charge the jury, as requested, that the confidential relation between trustee and *cestui que trust*, requires the former to give notice to the latter of every act or fact adverse to the interests of the *cestui que trust;* and, especially, where the interests of the trustee and *cestui que trust* conflict.

9th. That the Court was not justified, either by the law applicable to the case, or by the evidence in the cause, in leaving to the jury any question of adverse or hostile possession by the trustee, with respect to the rights of the complainant.

10th. That the decree of the jury is against and contrary to the evidence in the cause.

11th. That the decree of the jury is against and contrary to the weight of evidence in the cause.

12th. That the decree of the jury is against and contrary to the law of the case.

Defendant also excepted to that portion of the charge of the presiding Judge, in which he held and charged that, under the marriage settlement of Peter Guerard and Elizabeth Haist, the said Elizabeth had a reversion in fee in the property, transmissible by descent from her, and which vested absolutely in fee in her children living at her death. And that the life estate which her children took, under said marriage settlement, merged in the fee which they took on the death of their mother, in her reversionary interest.

EXHIBIT A.

STATE OF GEORGIA:

This indenture, made this thirtieth day of January, in the year of our Lord one thousand eight hundred and forty, between Mary Emma Guerard, of the first part, Richard W. Adams, of the second part, and Robert G. Guerard, of the third part, all of said parties being of the city of Savannah, in the county of Chatham and State aforesaid.

Whereas a marriage is intended shortly to be had and solemnized between the said Mary Emma Guerard and the said Richard W. Adams: And whereas the said Mary Emma Guerard is entitled to an undivided interest in certain real and personal estate, more particularly in certain real and personal estate designated and specified in a certain deed of marriage settlement or indenture of three parts, made and entered into on the eighteenth day of May, eighteen hundred and five, between Peter Guerard of the first part, and Elizabeth Haist of the second part, (the father and mother of the said Mary Emma Guerard,) and William Parker and Robert G. Guerard, trustees, of the third part, which said indenture is recorded in the office of the Clerk of the Superior Court of the county of Chatham, in Book A. A., folios 452 and 453, and to which reference is hereto made as a part of this indenture; and also in certain personal property and

slaves designated and specified in a certain deed made by William Parker on the eighth day of June, eighteen hundred and fifteen, to Steele White, trustee, and recorded in the office of the Clerk of the Superior Court of Chatham county, in Book L. L., folios 406 and 407, and to which reference is also hereto made as a part of this indenture : And whereas the said Mary Emma Guerard may hereafter become entitled to or possessed of certain other estate : And whereas, it has been agreed between the respective parties to this indenture, that the said present and future estate shall be settled upon the several uses and trusts hereinafter mentioned and expressed :

Now, this indenture witnesseth, that the said Mary Emma Guerard, for and in consideration of the said intended marriage, and of the sum of five dollars to her in hand paid by the said Robert G. Guerard at and before the sealing and delivery of these presents, the receipt whereof she doth hereby acknowledge, and also for divers other good and valuable considerations her thereunto moving, and by and with the approbation and consent of her said intended husband, Richard W. Adams, (made manifest by his signing and sealing this indenture) she, the said Mary Emma Guerard, hath granted, bargained, sold, enfeoffed, aliened, remised, released, confirmed and delivered, and by these presents doth grant, bargain, sell, enfeoff, alien, remise, release, confirm and deliver unto the said Robert G. Guerard, and to his heirs, executors, administrators, and assigns, all the undivided interest or estate which she, the said Mary Emma, hath in the said real and personal estate mentioned in said indentures and deeds already referred to; and also any other real and personal estate and property, which she may now in any manner possess, and also any other real and personal estate and property, rights or credits, which she may hereafter acquire, be possessed of, or entitled to, during the coverture, in any manner whatsoever, together with all the houses, buildings, liberties, privileges, easements, emoluments, hereditaments,

rights, members and appurtenances whatsoever to the real estate belonging or in any wise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits, thereof; and the future issue and increase of the female slaves; and all the estate, right, title, interest, property or possession, claim and demand whatsoever, in law or in equity, of the said Mary Emma Guerard, of, in or to the same, or any part or parcel thereof, with the appurtenances or increase: To have and to hold the said present and future real and personal estate with the future increase of the female slaves, and all and singular other the premises hereby granted, bargained, sold, enfeoffed, aliened and confirmed, with the hereditaments and appurtenances, unto the said Robert G. Guerard, his heirs, executors, administrators and assigns, to the use and behoof of the said Robert G. Guerard, his heirs, executors, and administrators: in trust, nevertheless, to hold the same for the only benefit and behoof of the said Mary Emma, until the said intended marriage shall take place; and from and immediately after the solemnization of the said marriage, then to hold the same for the joint benefit and behoof of the said Mary Emma and Richard W. Adams, during their coverture, (not subject, however, to the debts, contracts or engagements of the said Richard W.,) and for the benefit and behoof of the survivor of them, for and during the term of his or her natural life; and from and after the death of the survivor of the said Mary Emma and Richard W., then in further trust to convey the said real and personal estate to the issue of the said marriage, share and share alike, if more than one, his, her or their heirs and assigns, forever, as tenants in common, free from any trust: but if either the said Mary Emma or Richard W. shall die without leaving issue of the said marriage living at the time of such death, then in trust to convey the said real and personal estate to the survivor of the said Mary Emma and Richard W. Adams, her or his heirs and assigns, free from any trust, and for no other use, trust or benefit whatsoever.

Adams vs. Guerard et al.

And it is mutually covenanted and agreed by and between the parties to these presents, that it shall and may be lawful for the said Robert G. Guerard, his executors, administrators or successors in the trust, to sell and dispose of any or all of the property and estate herein and hereby conveyed or intended to be conveyed: Provided, always, nevertheless, that the said Richard W. Adams and Mary Emma shall join in the instrument of conveyance, (to signify, conclusively, their assent thereto,) or, if either of them be dead, then the survivor (if the said trust shall continue) shall join in said conveyance; and provided, also, that the proceeds arising from the sale and disposition shall be re-invested and preserved by the said Robert G. Guerard, his executors, administrators or successors in the trust, in the most advantageous manner, upon and subject to the uses and trusts hereinbefore mentioned and expressed; but the purchaser shall not be bound to look to the said re-investment.

In witness whereof, the said parties have hereunto set their hands and seals, at Savannah aforesaid, on the day and year first before mentioned.

MARY EMMA GUERARD, [*L. S.*]
RICHARD W. ADAMS, [*L. S.*]
R. G. GUERARD, [*L. S.*]

Signed, sealed and delivered in presence of
Eliza C. Wayne and W. Parker White.

STATE OF GEORGIA, Chatham County:

*Clerks' Office, Superior Court.*

Personally appeared William Parker White, a subscribing witness to the foregoing instrument of writing, who, being duly sworn, deposeth and saith that he was present and did see the same duly executed by the parties thereto, for the purposes therein mentioned, and that he signed the same as a subscribing witness to the due execution thereof.

W. PARKER WHITE.

Sworn to before me, this 5th March, 1840.

EDWARD G. WILSON, *Dep. Cl'k, S. C. C. C.*

Recorded 5th March, 1840, in County Records, Book YY, folios, 182, 183, 184.

EXHIBIT B.

STATE OF GEORGIA:

This indenture, made the eighteenth day of May, in the year of our Lord one thousand eight hundred and five, between Peter Guerard, of Savannah, gentleman, of the first part; Elizabeth Haist, of the same place, spinster, of the second part; and William Parker and Robert G. Guerard, the former of Savannah, physician, the latter of South Carolina, planter, of the third part, witnesseth, that in consideration of a marriage intended, by God's permission, to be had and solemnized between the said Peter Guerard and Eliza Haist, and with the view of settling and securing to the said Peter and Eliza, during their lives and to their issue, the property, both real and personal, which the said Eliza Haist is now possessed of and entitled unto within the State of Georgia, and also in consideration of the further sum of three dollars to the said Eliza Haist and Peter Guerard in hand well and truly paid by the said William Parker and Robert G. Guerard, at and before the sealing and delivery of these presents, she the said Eliza Haist, being of full age, and with the advice, consent and approbation of her said intended husband, Peter Guerard, testified by his being a party to and executing these presents, hath granted, bargained, sold, assigned, transferred and conveyed, and by these presents doth grant, bargain, sell, assign, transfer and set over unto the said William Parker and Robert G. Guerard, all that plantation situate at White Bluff, containing two hundred acres, be the same more or less, on Vernon river and known by the name of Wakefield ; also all that lot with the buildings thereon in the city of Savannah, known by the number five, Wilmington Tything, Derby ward; also all those seven (7) tracts of land in the counties of Liberty, Glynn, Wilkes and Washington, containing, viz: in Glynn, five tracts of 550, 500,

200, 185, and 200 acres; in Washington, one tract of 450 pine land; and in Wilkes, one tract of 400 acres oak and hickory land, and one unimproved lot in the town of Sunbury, together with their improvements and appurtenances; and also, all the following negro slaves, viz.: Peter, George, Abraham, Isaac, Jacob, Andrew, Joe, Mooser, Pinder, Lavina, Charlotte, Celia, Sarah, Will and Quash, fifteen in number, and the future issue of the females, with their future issue and increase, and all or any other property the said Eliza Haist may now be entitled to, real or personal, unto the said William Parker, and Robert G. Guerard, their heirs, executors, administrators and assigns forever. In trust, nevertheless, to and for the sole use, benefit and behoof of the said Eliza Haist and Peter Guerard, during their natural lives and the life of the longest liver of them, and from and immediately after the death of the longest liver of them, to and for the sole use, benefit and behoof of all and every the child and children of the said Peter Guerard, upon the body of the said Eliza Haist begotten, share and share alike, if more than one, if but one, then to that one alone, free from any debts or incumbrances, created or to be created, by the said Peter Guerard.

In witness whereof, the said parties have hereunto interchangeably set their hands and seals, at Savanah, the day and year first above written.

ELIZABETH HAIST, [L. S.]
PETER GUERARD, [L. S.]
WILLIAM PARKER, [L. S.]

Sealed and delivered in presence of us, the words "and all or any other property the said Eliza Haist may now be entitled to, real or personal," first interlined in the third line from the bottom of the second page.

GEORGE MILLEN,

RICHARD M. STITES, N. P.

Received of and from the within named William Parker

and Robert G. Guerard, the sum of three dollars in full of the consideration within specified.

ELIZABETH HAIST.

Witness:

GEO. MILLEN,

R. M. STITES, *Not. Pub.*

Recorded 8th August, 1807, in book A. A. folios 452, 453.

EXHIBIT C.

GEORGIA:

Know all men by these presents, that I, William Parker, of Savannah, in the State of Georgia, aforesaid, for and in consideration of the sum of two thousand nine hundred dollars, to me in hand paid, at or before the sealing and delivery of these presents, by Steele White, of the same place, the receipt whereof is hereby acknowledged, hath bargained, sold and delivered, and by these presents doth bargain, sell and deliver unto the said Steele White, the following negro slaves, to-wit: Diana, Thisbee, Charles, Nancy, Rose, Tom, Maria, Bob and Noke, together with the future issue and increase of the female slaves. To have and to hold the said several negro slaves before named with the future issue and increase of the female slaves unto the said Steele White, his executors, administrators and assigns; in trust, nevertheless, to and for the only use, benefit and behoof of Mrs. Elizabeth Guerard, the wife of Peter Guerard, of Savannah, for and during the term of her natural life, and if she survive the said Peter Guerard, then from and immediately after her death to the child or children which she may leave by the said Peter Guerard, to them, their executors, administrators and assigns, as tenants in common. And if the said Peter Guerard should survive the said Elizabeth Guerard, then from and immediately after the death of the said Elizabeth Guerard, to and for the only use, benefit and behoof of the said Peter Guerard for and during the term of his natural life, and then from and after the death of the said Peter Gue-

rard, to and for the only use, benefit and behoof of the child or children of the said Peter Guerard as tenants in common, to them, their executors, administrators and assigns; and in the event of the said Peter Guerard dying without child or children living at his death, then to the right heirs of the said Peter Guerard, or to such person as he by his last will and testament may dispose of the said negroes, subject to the life estate of the said Elizabeth Guerard.

In witness whereof, the said parties have hereunto set their hands and seals, this eighth day of June, one thousand eight hundred and fifteen.

WM. PARKER,      [*L. S.*]
STEELE WHITE, [*L. S.*]

Sealed and delivered in the presence of
  WILLIAM DAVIES, *N. P.*
Recorded 19th October, 1852, in book LL, folios 406, 407.

HARDEN; and WILLIAMS, for plaintiff in error.

LAW, BARTOW & LOVEL; and JACKSON, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

[1.] The marriage settlement of 1805, between Elizabeth Haist and Peter Guerard, conveyed the entire legal estate in the real and personal property, to Dr. Parker, the trustee, and then declared a trust in favor of the husband and wife during the life of the longest liver of them, with remainder to their children, without using words either expressly confining the remainder to a life estate in the children, or expressly declaring it to be an estate of inheritance in them. It was contended that this settlement having been executed before our statute of 1821, making all estates, estates in fee unless some less estate be expressly limited, and using no words of inheritance, declared a trust in favor of the children for their lives only, leaving the equitable estate which would remain

after their death, as a *resulting trust* to the original owner, Elizabeth Haist, or to her husband, by virtue of his marital rights.   It is useless to consider the effect of the settlement by itself, for we think the resulting trust is completely rebutted by the deed of 1819, between the same parties.   In 1819, the very same parties bought other property and took a deed, which professes to declare the very same trusts as the marriage settlement, and in doing so, declares a trust in favor of the husband and wife during the life of the longest liver of them, with remainder to the children and "their *heirs*"— pursuing the intent of the marriage settlement, but using new language which shows that intent to have been, that the equitable fee should vest in the children, leaving nothing to result to anybody.   It was abundantly shown on one side in this argument, and not disputed on the other, that a resulting trust may be rebutted even by *parol* declarations of the person in whose favor it would otherwise be raised; and it is effectually rebutted in this case by the deed of 1819.   The equitable fee went to the children, and in 1820, when the wife died, her estate no longer needing a trustee to preserve it from the marital rights of her husband, the whole object of the trust was accomplished, and the trust itself, therefore, terminated, and the children from that time stood clothed with the legal and equitable fee in remainder, subject to the life estate of the husband, who was then living.   One-third of this vested legal remainder belonged to Mary Emma Guerard, one of the three children, and passed under her marriage settlement with Mr. Adams.   Under the terms of that settlement, when Mrs. Adams died in 1840, leaving no issue, Mr. Adams was entitled to the whole of her share in remainder, and on the death of the life-tenant, Mr. Peter Guerard, in 1843, was entitled to it in possession also.

[2.]  Such being our opinion of Mr. Adams's right, we are yet constrained to hold that it has been barred by the statute of limitations.   It was suggested that the statute could not bar him if, as some of the evidence seemed to indicate, Mr.

Robert Guerard held the property after the death of Mr. Peter Guerard, not as his own, but as the property of the Guerard estate. The only true question as to the manner of his holding, was as to its being *adverse to Mr. Adams*. The possession of a person holding under another, is adverse to everybody but that other under whom he holds. There was no pretence that the holding was under Mr. Adams, and it was therefore adverse to him. It was also suggested that Mr. Adams could not be barred, because he was mistaken as to the legal effect of the facts. It was said that equity will relieve from a mistake of law as well as from a mistake of fact, and that the statute does not begin to run till the discovery of the mistake. It is too late to deny in this Court, that there are mistakes of law as well as mistakes of fact, which will be relieved in equity; but I apprehend relief was never granted from such a mistake as this. Those mistakes from which relief has been granted, were mistakes which occurred in doing something, not in doing nothing; they were mistakes of action, not of mere inaction. When one has contracted or acted on a false assumption of fact or of law, equity may relieve him from the effects of the action, and will not begin to count time against him until the discovery of the mistake; but where he has simply lain still, under a mistaken assumption of either fact or law, without having ever acted at all, it is not a question when time will begin to be counted against his relief, but it is a case where no relief will be granted at any time from the effects of his inaction. One of these effects of inaction, is the loss of his right by the statute of limitations. The truth is, that the Courts of Equity, in administering relief from fraud and mistake, a class of relief which, in its original at least was peculiar to them, and to which there is no statutory bar, have adopted a bar of their own, and in fixing it, have proceeded on a different principle from the statutes of limitation. The statutes in cases where they are applicable, count

time from the beginning of the cause of action, and in such cases, Courts of Equity apply the statutes in their actual terms, but in cases of relief from fraud and mistake there is no statute of limitation applicable to the class of cases, and Courts of Equity, in adopting a bar for that class of cases, count time, not from the perpetration of the fraud or the occurrence of the mistake, (when the cause of action for relief begins,) but from the discovery of the *fraud or mistake.* But still the question remains, whether it is such a mistake as will put a Court of Equity in motion. When once in motion, it will relieve and will count time only from the discovery of the mistake; but it is only a mistake on which there has been action, that will put it in motion. Mere inaction, in a case where the statute makes it a bar, is a bar in equity, as well as at common law. I apprehend there is no case, certainly no case was produced in this argument, where a Court of Equity has relieved a party from the operation of the statute, where the bar had attached, before the case was brought in some shape, into a Court of common law or the Court of Equity. Courts of Equity *do not hesitate* to protect a right which has become barred by the statute of limitations during the pendency of the same subject-matter in the Court of Equity, but to relieve from the bar where it has attached before the matter is introduced into either Court, would be to set the statute aside. But it was further said, that the statutory period applicable to this case, is twenty years, and not seven and four years. The marriage settlement between Mr. Adams and his wife, directs the trustee, in the contingency which happened, to *convey* the estate to Mr. Adams at the death of his wife, and it was contended that the trustee by signing as a party, *promised to make that* conveyance, and so, was under an obligation under seal, to do so. We think there was no need for a conveyance from the trustee to Mr. Adams; that the marriage settlement itself operated as a conveyance; and that there being nothing *needful* to be done by a trustee, there was *nothing* to be

done, and that the office of trustee was ended by the death
of Mrs. Adams.   We think that the marriage settlement it-
self, operating as a conveyance to Mr. Adams, has every
effect which could possibly be produced by the conveyance
which it directs the trustee to make, and that there was there-
fore no need for the conveyance by the trustee.   The case of
*Edmondson vs. Dyson*, 2 *Ga. Rep. page* 307, was cited as au-
thority, to show that wherever there is a direction in one
conveyance that the trustee named in it, shall make another
conveyance, he must do so, and that his office of trustee will
continue until he does so, whether the second conveyance
will or not produce any different effect from what would be
produced by the original conveyance, operating itself as the
conveyance which it directs.   The decision is very far from
going to such an extent, nor has any decision gone so far.
The case was a devise to Dyson in trust, to hold for Rake-
straw during his life, and then to convey to Rakestraw's
heirs at law in fee.   The question was whether the rule in
Shelley's case applied, uniting both estates in Rakestraw, or
whether the heirs at law should take the estate expressed for
them, as purchasers.   The rule in Shelley's case does not
allow the ancestor to take a life estate, and his heirs at law
to take a remainder in fee by the *same instrument*, but does
not prohibit the ancestor from taking a life estate from one
instrument, while the heirs at law take the remainder in fee,
from *another instrument*.   Where the same instrument con-
veys both the estates, the rule unites them both in the first
taker, but where one instrument conveys one estate and
another instrument conveys the other, the rule produces no
such union, but leaves the ancestor and the heirs to take,
each the estate which is expressed for him by the instrument
in his own favor.   The Court held, that the trustee should
execute the conveyance in that case, in favor of the heirs at
law, because the heirs could claim under that conveyance, if
made as directed, and *defeat the rule*, while if they were left
to claim under the will, they and their ancestor would be

claimant's under the same instrument, and the rule would apply and cut them off from the estate expressed for them in the will.   The conveyance in that case was certainly thought by the Court to have a very important *effect, different* from the effect of leaving the heirs to claim under the will; and it was *for* its effect, that the Court ordered the trustee to execute it.   If the Court had thought that the will, operating as a conveyance to the heirs, would have produced the *same effect* as the conveyance, which the will directed to be made in their favor, the conveyance would not have been ordered, for that would have been to order a thing *useless* and of no effect.   Chancery dispenses with useless things, and terminates the office of the trustee the moment that nothing of effect remains for him to do, and leaves the use to be executed by the statute of uses, uniting the legal title and the use together.   The Courts of Equity never interfere with the execution of the use by the statute, unless, or any longer than, there is something for the trustee to do, which being done, will produce a different result from the statute.   If A. should convey to B., in trust that B. should convey the same title to C., in trust that C. should convey the same title to D., and so on to Y., in trust that Y. should convey the same to Z., here the first conveyance would raise a use in favor of Z., and equity would leave the statute to execute it at once, by uniting the legal title with it.   If all the intermediate conveyances should be made as directed, they would produce at last the precise *result*, which would be produced by the statute without them.   Equity therefore simply leaves the statute to do its work, and dispenses with the intermediate conveyances, thus arriving at the *same end* by a nearer road.   So in Mr. Adams's case, the marriage settlement did not in terms, convey to him at the death of his wife without issue, but by directing a conveyance to him in that event, it raised a use in his favor, and the effect to him was precisely the same, whether the trustee retired from the same at her death, leaving the statute to execute the use by clothing him with the legal

title as well as the use, or the trustee, executed the conveyance which would have done only the same thing. Therefore, the marriage settlement itself operated as a conveyance to him, the moment his wife died, the trustee then retired forever from the scene, and Mr. Adams stood clothed with the legal and beneficial interest by operation of law. His estate was one in remainder, but his right of action to reduce it into possession arose as soon as the life tenant died in 1843, and the Guerards took adverse possession. Not having asserted his right in the personalty within four years, nor in the realty within seven years, we think his right in all is barred by the statute of limitations. The statute being conclusive in the case without regard to the original right, the judgment is affirmed.

Judgment affirmed.