The People *v.* Clarke.

THE PEOPLE OF THE STATE OF NEW-YORK *vs.* GEO. CLARKE.

Under sections 308 and 309 of the code, *the people* are liable to be charged with an extra allowance for costs in actions brought by them.

An action brought by the attorney general, in the name of the people, in pursuance of the joint resolution of the legislature passed on the 31st of March and the 10th of April, 1848, for the purpose of testing the validity of the titles of certain landlords to lands mentioned in said resolution, is one of those in which the code permits an extra allowance to be made.

MOTION by the defendant, for an extra allowance for costs, after a demurrer to the complaint had been allowed. The facts are detailed in the opinion of the court.

*John Van Buren*, for the plaintiffs.

*N. Hill Jun.* and *S. Beardsley*, for the defendant.

WILLARD, J. At the opening of the legislature in January, 1848, Governor Young called their attention to what he denominated the "*manor excitement.*" He observed, among other things, that one of the sources of disquietude among the tenants, was the apprehension that the landlords have no title to the

lands, and that after paying rents and making improvements for a long series of years, they may in virtue of a superior title, be ejected from their possessions. He adverted to the rule of law which now exists, that a tenant can not dispute the title under which he holds, and to the applications which had been made to the legislature for a law requiring the landlord, in actions to be brought by him against his tenants, to prove that he had a good paper title to the land at the time the lease under which the tenant holds was executed. He then proceeded as follows : " In actions to be brought by the state involving the title to lands, the obstacles that are thrown in the way of private persons in its investigation, would not be encountered ; and the adjudication would be entirely conclusive, and should, and it is believed would be, entirely satisfactory to the tenants. If an action or actions of ejectment shall be brought by the state, in such case or cases as you may in your wisdom prescribe, and be fairly tried, the state will have discharged a duty which, in my judgment, it owes to the importance of the subject and to the interest as well of the landlords as of those holding under them in the character of tenants and purchasers. It is difficult to understand why the most sensitive holders of large tracts of land should feel any alarm at the prospect of such action, on the part of the government. The confirmation of their titles can not fail to render essential service, in allaying irritation and disquietude, and hence increasing the value and productiveness of their lands ; and I am quite sure it will not be supposed that the state will engage in such an enterprise for the purpose of enriching itself." He then adverted to the uniform practice of the government in regard to escheats, as furnishing a sure guaranty of her justice and magnanimity ; and remarked that if it should be found that the legal title to any of the lands for the recovery of which any such prosecution shall be instituted, shall be in the state, she will cheerfully release the same to such claimants as may be equitably entitled to the lands. (*Assembly Doc.* 3, *p.* 23, 24, *for* 1848.)

The subject thus brought to their notice was referred by the legislature to a select committee on landlord and tenant, the majority of whom, at a subsequent day, reported a concurrent

The People *v.* Clarke.

resolution instructing the attorney general, among other things, to inquire whether in his judgment the state may justly and legally lay claim to the title of land claimed by the present landlords, by escheat or otherwise; and if, in his opinion, the title of the present claimants may be justly questioned, and the right of the state to such lands, or to any part thereof, be established according to law, that he take measures, either by suit at law or other proceedings, as will test the validity of such titles or claims. (*Assembly Doc.* 125.) This resolution was adopted by the assembly on the 31st of March, 1848, (*Assembly Jour. pp.* 1011, 1015,) and concurred in by the senate on the 10th of April of the same year. (*Senate Jour. of* 1848, *pp.* 572, 573.)

In pursuance of the foregoing resolution, the late attorney general, on the 1st November, 1849, commenced the present action, to vacate letters patent granted by George the 2d, on the 19th of November, 1737, to William Corry and his associates. The patent conveyed to the patentees in fee, 25,700 acres of land in the now county of Montgomery. The one-half of the patent having already been recovered by the state; the other half, claimed to belong to the defendant, a descendant of Lieut. Gov. Clarke, was sought to be recovered in this action.

The complaint was framed under the 433d section of the code of 1849, and the grounds on which it asks to annul the said patent are, the alledged fraudulent suggestions and misrepresentations contained in the petition on which it was granted, and the fraudulent concealment of certain facts therein mentioned. The cause was finally put at issue in October, 1850, on demurrer to the defendant's amended answer, and was argued at the Montgomery special term in February last, before Mr. Justice Cady. At a subsequent day, the learned judge, in an elaborate opinion, gave judgment for the defendant.(*a*)

At the Montgomery special term in June last, a motion was made by the defendant's counsel, founded on an affidavit and notice of a motion to the attorney general, and on the pleadings in the cause, for an extra allowance under §§ 308 and 309 of the code. In that affidavit it is shown, that the defendant as devisee

(*a*) See 10 *Barb.* 120, *S. C.*

of his father, owns more than 12,000 acres of land in the county of Montgomery included in the patent sought to be vacated, and that the value of his estate therein exceeds $150,000 ; and that the legal principles and questions involved in the action, affect his title to other large tracts of land in the state, owned by him. It is also stated in the said affidavit, that in the preparation of his defense, and as counsel fees in this action, he has already expended above $1100, and that this. sum does not include the compensation of one of his counsel, to whom nothing has yet been paid.

The facts contained in the defendant's affidavit are not controverted ; but the claim to an extra allowance is resisted upon two grounds : 1. That the people not being named in the sections of the code under consideration, are not liable to be charged with an extra allowance ; and 2. That this action is not one of those in which the code permits an extra allowance to be made.

I. Are the people liable to be charged with an extra allowance under §§ 308, 309 ?

The tenth title of part two of the code treats of the costs in civil actions. After regulating the costs, in ordinary actions between party and party, when one party or the other is entitled to recover them as of course ; and providing for cases where costs rest in the discretion of the court ; and for extra allowances, beyond the regular costs, which are to be adjusted on notice, by the clerk, it proceeds in the 319th section as follows : " In all civil actions prosecuted in the name of the people of this state, by an officer duly authorized for that purpose, the people shall be liable for costs, in the same cases and to the same extent as private parties. If a private person be-joined with the people as plaintiff, he shall be liable in the first instance for the defendant's costs ; which shall not be recovered of the people, till after execution executed therefor against such private party and returned unsatisfied." The 319th section of the code was copied, without essential alteration, from 2 R. S. 619, § 38. As no private person was united with the people as plaintiffs, the people alone were liable to costs on failing in their action, to the same extent as private parties. This is the express language of the

The People v. Clarke.

act, and it is difficult to conceive of any form of words by which it could be more plainly expressed.

II. The next inquiry is, whether this action be one in which the code permits an extra allowance to be made.

By the 308th section, such allowance is admissible in an *action* for the recovery of money, or of *real* or personal property, if a *trial* has been had, and the case be difficult or extraordinary.

(1.) Was this a civil action? By the 1st section of the code an action is defined to be an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Actions are of two kinds; civil and criminal. A criminal action is prosecuted by the people of the state, as a party, against a party charged with a public offense, for the punishment thereof; every other is a civil action. (*Code*, §§ 2–6.) As the defendant is not pursued in this case for a public offense, the action is necessarily a civil action. Indeed, the 433d section, under which this action is brought, calls it an action, in terms.

(2.) Has there been a trial? By the 252d section, a *trial* is defined to be the judicial examination of the issues between the parties, whether they be issues of law or fact. When the demurrer in this case was argued at the February special term, it was, according to the language of the code, brought to *trial*.

(3.) Was this action brought for the recovery of *land*, within the meaning of the code? This can be best tested by a reference to what would have been the result, if the plaintiffs had prevailed. According to the revised statutes, (2 *R. S.* 580, §§ 24, 25,) had judgment been rendered in favor of the plaintiffs, on the demurrer, or upon a verdict, a copy of the record was required to be filed in the office of the secretary of state, and an entry thereof to be made in the records of the commissioners of the land office, of the substance and effect of such recovery, and of the time when the record thereof was docketed. Such record and entry would have been conclusive evidence of the title of the plaintiffs to the land; and the 25th section author-

ized the commissioners of the land office to dispose of it, in the same manner as if such letters patent had never been issued. The avowed object of the action, so far as can be gathered from the recommendation of the governor and the joint resolution of the legislature, was to take away the title of the defendant and establish that of the plaintiffs; such would have been the consequence had the plaintiff obtained judgment on the demurrer.

The right to costs does not depend on the *form* of the prayer for relief in the complaint. We must look at the *substance* of the thing, rather than the *shadow*. If the relief prayed for had been granted, the plaintiffs would have recovered the land, and the defendant been left a naked trespasser without title. The plaintiffs, too, would have been entitled to costs, and to an extra allowance in the discretion of the court. That the plaintiff, on failing to recover, should be liable to costs and an extra allowance, in the same manner, is called for by the principles of a just reciprocity. It would be an impeachment of the fairness and good faith of the executive and legislature, to suppose them willing to subject the defendant to a hazard on the score of costs, which they were afraid to encounter on the part of the plaintiffs. In former times, the people screened themselves from costs, by taking shelter under the prerogative of the crown. That shelter was wisely removed by the revised statutes, and the people now meet their antagonists on equal terms. It must be presumed that the legislature, when they ordered this action to be brought, were aware of the consequences of failure. When they adopted the code, they meant to subject the people to its provisions, as well as individuals. (*Code*, § 319.)

Again: by the code, (§ 69,) all *forms* of action are abolished, and instead thereof, but one form of action for the enforcement and protection of private rights and the redress of private wrongs, is recognized, and that is denominated *a civil action*. There is now no such action by name, in the code, as an *ejectment*, writ of right, &c. or any other of the ancient actions for the recovery of land. The 308th section of the code must relate to any action, known to the code, by virtue of which the people, or any other party, can recover a title to real property.

The People *v.* Clarke.

The present action is precisely of that character. It is express-ly recognized by § 433 of the code, and it has been shown to be for the recovery of real estate. This vacating the patent, is merely the removing an obstruction to the plaintiff's recovery of the land. The latter is the main object. It is analagous to an action by the heir, claiming that the will of his ancestor by which he is disinherited, is void for a want of capacity to make it, or for fraud, or the like. Can it be said that such action is not for the recovery of real estate, because the will must first be annulled, before a recovery can be had?

(4.) Was this case *difficult* or *extraordinary*, within the meaning of the code? This has not been denied. It was both difficult and extraordinary. It was a case not within the range of common professional experience and research. It justified, if it did not require, on the part of the defendant, a consulta-tion with the wisest and most experienced counsel in the state. It, therefore, involved the necessity for large disbursements for legal assistance.

The 309th section points out the mode in which the additional allowance, beyond taxable costs, shall be computed. If the plain-tiff recover judgment it shall be upon the amount of money, or the value of the property recovered, or claimed, &c. &c. 2d. If the defendant recover judgment, it shall be upon the amount of money, or *the value of the property claimed by the plain-tiff*, &c. &c. Such amount of value must be determined by the jury, *court* or referee, by whom the action is tried, or judg-ment rendered, &c. It is not required that the value of the property should be determined by the same *judge* who tried the cause, but by the *court* by whom it was tried. The *court*, though held by another judge, is as competent to determine this question, as the judge who presided at the trial. It is deter-mined merely by an inspection of the pleadings, or the read-ing of an affidavit.

Nothing remains but to determine the amount of the addi-tional allowance proper to be made to the defendant. The 303d section of the code, which abrogates the former fee bill, substi-tutes certain sums, which are specifically mentioned in subse-

quent sections, to be allowed to the prevailing party by way of *indemnity* for his expenses in the action. These are to be adjusted by the clerk on the application of the prevailing party, and a notice to the party to be charged, and are to be inserted in the entry of the judgment. It was foreseen by the legislature that these allowances would not always amount to an *indemnity*, and therefore it was provided by the 308th section, that, in addition to these allowances, if the action be for the recovery of money, or of real or personal property, and a trial has been had, the court may, in difficult or extraordinary cases, make an allowance of not more than ten per cent on the recovery or claim, as in the next section prescribed, for any amount not exceeding five hundred dollars; and not more than five per cent for any additional amount. The like allowance is permitted in partition and mortgage foreclosure cases, in attachment cases, proceedings for the construction of a will, or to compel the determination of claims to real property, and also in any case where the prosecution or defense has been unreasonably or unfairly conducted. It is evident that the legislature intended, in the cases within the section, that the prevailing party should be *indemnified* to the extent permitted to be allowed, for all his expenses which were reasonably necessary in the prosecution or defense of the action. The latter clause of the section obviously provides for an allowance by way of *punishment*, irrespective of indemnity; for it is clear that an action, neither difficult or extraordinary, may be so unfairly and unreasonably conducted, as to deserve something more than the mere censure of the court. The extent to which an allowance could be made in this case, is seven thousand five hundred and twenty-five dollars. A much smaller sum will in the present case indemnify the defendant. The action was brought, as the result has proved, without any just foundation, and has been shown by Judge Cady, by whom it was decided, to be bereft of every semblance of merits. With the correctness of that decision we have nothing to do on the present motion. It is, until reversed, the law of the land, and entitles the defendant to move for the relief he now seeks. Nor should the court be deterred from

the exercise of its power, by the apprehension that the present decision will form a precedent for the defendants, in the other "manor suits," who have already prevailed, or may hereafter obtain judgment against the people.   If these numerous actions shall lead to a heavy expenditure of the public money, the responsibility must be borne by the executive who recommended, and the legislature who directed the actions to be brought. The people of this state are surely too magnanimous to shrink from reimbursing a citizen, whom their public servants have unjustly vexed.

The additional allowance in this case should be enough to indemnify the defendant for the sums he has paid for counsel fees, and it is accordingly ordered that eleven hundred dollars be allowed.   This amount, in case the people are liable at all, has not been contested.

[MONTGOMERY SPECIAL TERM, June 26, 1851.   *Willard*, Justice.]