JONATHAN JACKSON *et al.*

*v.*

JACOB BERNER.

1.  EVIDENCE—*copies of patents from the State.*  Under section 96 of the school law of 1857, authorizing the Auditor of Public Accounts, upon certain proof furnished, to issue in lieu of a patent for land, which has been lost or destroyed, "a duplicate copy" thereof, it is not necessary that such copy should have affixed to it the seal of State, to render it admissible in evidence for the same purposes for which the original might have been offered.

2.  ADVERSE POSSESSION—*it must be hostile.*  This court has repeatedly said, that adverse possession, sufficient to defeat the legal title, where there is no paper title, must be hostile in its inception, and continue uninterruptedly for twenty years.

3.  FORMER DECISIONS.  The case of *Turney* v. *Chamberlain*, 15 Ill. 271 ; *Rigg* v. *Cook*, 4 Gilm. 336, and *McClellan* v. *Kellogg*, 17 Ill 498, cited in support of this doctrine.

4.  ADVERSE POSSESSION—*proof of must be clear and positive.*  Adverse possession is not to be made out by inference, but by clear and positive proof.  The possession must be such as to show clearly that the party claims the land as his own, openly and exclusively.

APPEAL from the Circuit Court of Cook county ; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. SCAMMON, McCAGG & FULLER, for the appellants.

Mr. OBADIAH JACKSON, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment, brought to the Circuit Court of Cook county, by Jacob Berner, against Jonathan Jackson and others, heirs at law of Gideon M. Jackson, deceased, to recover the possession of a part of lot eighteen, in block one hundred and thirty-one, in the school section addition to Chicago.

The cause was tried by a jury, who found a verdict for the plaintiff. A motion for a new trial was overruled, and judgment rendered on the verdict. To reverse this judgment the defendants bring the record here by appeal.

The plaintiff derived title through mesne conveyances, from the State. The defendants claimed to have held, through their ancestor, Gideon M. Jackson, the premises in question, adversely, for more than twenty years, and set the same up as a bar to the action.

It seems that Gideon M. Jackson had purchased lots nineteen, twenty, twenty-three and twenty-four, in block one hundred and thirty-one, and erected a building on lot nineteen, as he supposed, called "Southern Hotel," in 1845, and moved into it, with his family, and occupied it until his death, which occurred in January, 1850, and the defendants, his heirs at law, have continued its occupancy, and are yet in possession thereof. It is claimed by the plaintiff, that this building, so erected, occupies twenty-eight feet, on State street, of lot eighteen, which he owns. A preliminary question, somewhat technical, is made upon the exemplification of the patent for the premises in question, which the court admitted as evidence, against the defendant's objection.

It appears, the original patent from the State was issued to one Chauncey Goodrich, on the 2d day of July, 1836. On affidavit being made and filed with the Auditor of Public Accounts, of its loss or destruction, that officer, on the 30th day of November, 1866, issued, in lieu thereof, what he styles "a duplicate copy," under his seal of office, and duly certified, being the paper in question.

The point of objection made by appellants, is, that the great seal of State was not affixed to the copy, as it was to the original, and as required by section 96 of the school law of 1857.

The original patent being lost, it can not be known the great seal of State was affixed to it, the presumption is, it was, as the law so required, but that a certified copy should bear on its face, the impress of the great seal, is not a requisition of the statute.

The section is as follows: Purchasers of common school lands, and their heirs and assigns, may obtain duplicate copies of their certificates of purchase, and of patents, upon filing affidavit with the school commissioners in respect to certificates, and with the Auditor in respect to patents, proving the loss or destruction of the originals; and such copies shall have all the force and effect of the originals. Scates' Comp. 464. The ninety-fifth section requires the Auditor to make out the patents from returns made to him by the school commissioners. It was made the duty of the Governor to sign them, and of the Auditor to countersign them, and of the Secretary of State to affix to them the great seal of the State, and the Auditor was further required to note, on the lists of sales reported to him by the school commissioners, the date of each patent, in such manner as to perpetuate the evidence of its date and delivery. Ib. 463.

It is quite apparent, we think, although the term "duplicate copy," is used in the statute, a certified copy of the original, under the seal of office of the Auditor, was all that was contemplated by the legislature. A compliance with the statute

could not be had, if to the word "duplicate" is assigned its technical meaning. Duplicates are executed simultaneously, each one possessing the same formalities of execution. In the case of patents issued by a functionary of the government, whose term of office has expired, or who may be dead, no duplicate thereof, other than certified copies made by the officer, who is required to note the date of each patent on the lists of the lands sold, which are in his custody, could possibly be made.

As we understand the statute, these patents have no recorded existence in any public office, save that of the Auditor, and the law, in case an original patent is lost, would be valueless if such loss could not be supplied by a certified copy made by him, and authenticated under his official seal. We do not think there is any force in the objection. Copies of land patents issued by the United States, are exemplified under the seal of the General Land Office, with a *locum sigilli* for the great seal of the United States, and this is the usual, uniform, and only practicable or proper mode.

Upon the main question there is not much difficulty.

As we understand the imperfect and unsatisfactory plats contained in the record, the lots owned by the plaintiff, were lots thirteen and eighteen, in block one hundred and thirty-one, fronting, each, fifty feet on State street, and one hundred and four feet deep. The lots owned by the defendants, are lots nineteen and twenty-four, fronting on State street, nineteen being adjoining eighteen, on the south, and twenty-four being on the corner of State and Twelfth streets, and just south of nineteen.

When the ancestor of defendants purchased these lots, in 1845, there were no buildings on that block. State and Twelfth streets were laid out, but not graded, and it was not certain where the precise lines of any of these lots would run, when instruments were applied, nor was land then so valuable as to make precision in lines a paramount object. The elder

Jackson, no doubt, supposed, when he laid the foundation of the "Southern Hotel," that he was placing it on the most northerly lot he had purchased, which was lot nineteen. Instead of doing so, he placed the north line of his building twenty-eight feet north of his north line, thus taking that number of feet, fronting on State street, and running back the entire depth of the building, which appertains to lot eighteen, and leaving to the plaintiff but twenty-two feet on State street. when he should have fifty feet. This is proved by the most satisfactory testimony, that of Van Horn, a practical engineer and surveyor, and he is corroborated by McDearmott, also a civil engineer and surveyor, both of whom had applied their instruments to the land. There is no dispute about this, nor can there be, as it is a mathematical truth.

Of this twenty-eight feet, the defendants had been in the actual possession more than twenty years before the commencement of this suit, and were in possession at the time the issue was tried. If this possession was adverse, then the plaintiff can not recover.

That the elder Jackson was conscious his building was on some portion of lot eighteen, is very clearly established, and that it was the result of ignorance of the division line between it and his own lot, nineteen, is equally certain. He never denied some part of his building was on plaintiff's lot, and he never claimed to hold it, small or large as the portion might be, adversely to the plaintiff. He charged it to the unskillfulness of the surveyor. No witness has testified he held any portion of lot eighteen in hostility to the plaintiff, or adversely to his claim. On the contrary, when served, by Berdel, with a notice to quit that portion of the lot, whatever it might have been, he occupied, belonging to plaintiff, he said the building was put up by mistake; it was not rightfully surveyed; the streets were not laid out, and he had to move anyhow, and then it would be done right at once; he said he was several feet off the line of State street; having to move to

208    JACKSON *et al. v.* BERNER.    [Sept. T.,

Opinion of the Court.

be on the line of State street, he could then move the building south on his own line. At this time he said he knew his house was on plaintiff's line, but did not know how much. He said he wanted to move east, toward State street, and he further said he wanted to pay plaintiff rent.

It was proved, by one Lane, that, in 1848, he heard a conversation between plaintiff and the elder Jackson, in relation to their boundaries. The plaintiff said to Jackson, that he built his hotel too far on his ground. Jackson replied, "If it is too much, cut it off." Plaintiff said he would not cut it off; he wanted Jackson to move. Jackson replied, he would'nt move; he would rather pay rent; he was mistaken, maybe, in building.

There is nothing in the record to contradict this, and so far from showing Jackson's occupancy, of plaintiff's ground as hostile, it manifests the contrary. This court has said, in several cases, that adverse possession, sufficient to defeat the legal title, where there is no paper title, must be hostile in its inception, and continue hostile, uninterruptedly, for twenty years. *Turney* v. *Chamberlain*, 15 Ill. 271; *Rigg* v. *Cook*, 4 Gilm. 336, and in *McClellan* v. *Kellogg*, 17 Ill. 498, it was said, adverse possession was not to be made out by inference, but by clear and positive proof, and the possession must be such as to show clearly that the party claims the land as his own, openly and exclusively.

The proof, on the part of the appellants, shows nothing of this character. No right was ever claimed, at any time, by the ancestor of defendants, adversely to any right which the plaintiff had acquired to the whole of lot eighteen, in its entire length and breadth.

The proof failing to establish an adverse possession, it is unnecessary to inquire whether such possession as Jackson may have had, was, or not, interrupted by acts of ownership of plaintiff over any part of the disputed territory.

The jury, under proper instructions from the court, found the possession was not hostile, and we see no reason why their finding should be disturbed.

It is also complained, by appellants, that the court refused to give the following instruction to the jury:

"The jury are instructed the declarations and statements of Gideon Jackson, in regard to the claims of the plaintiff, as stated by the witnesses, will not prevent the running of the statute of limitations in his favor, unless the jury further believe, from the evidence, that he then intended, by such declarations and statements, to surrender his claim to the property in dispute, and no longer to hold the property in his own right, adversely to the plaintiff."

The objection to this instruction is, that it assumes an adverse possession had been proved; but if Jackson disclaimed a hostile holding, the statute would not run in his favor, apart from any question of a surrender. What matters it, if there was no adverse holding, whether Jackson intended to surrender the possession or not?

Upon the point that the witness, Berdel, was permitted to speak of a notice he served on Jackson, signed by the plaintiff, in relation to defendants' possession, and to quit the possession, the testimony shows Berdel did not give the contents of the notice, but referred to it as fixing the time when he had the conversation with Jackson about the dispute, and to Jackson's statement about the mistake of the surveyor; his saying he would have to move the building to the line of State street, and proposing to pay rent. The notice was of no importance, as no suit followed it. The statements of Jackson, at the time it was served upon him, are alone material.

We perceive no objection to any one of the instructions given for the plaintiff. They state the law of the case, as applicable to the question of adverse possession.

27—48TH ILL.

There being no error in the record, in the opinion of the majority of the court, the judgment of the circuit court is affirmed.

*Judgment affirmed.*