O. B. HART, ET AL., APPELLANTS, VS. W. M. BOSTWICK AND WIFE, RESPONDENTS.

1. In an action to recover the possession of real estate, the defendants answered that the action was not instituted within seven years next after the cause of action accrued, excluding the period of time between the 10th day of January, 1861, and the 25th day of October, 1865. The third section of an act providing for the stay of executions, approved December 13, 1861, enacted that " the statutes of limitation now in force in this State in relation to civil actions of every description, be and the same are hereby suspended, and shall have no operation or effect so long as this act may continue in force and unrepealed:" *Held,* That the plea was bad for the reason that this law suspending the statutes of limitation was in force and unrepealed, and that there has not been any law in operation limiting the time for commencing civil actions since the date of its passage.

2. Prior to January 8, 1848, the statute limited the time for commencing an action for the recovery of the possession of lands to twenty years from the accruing of the cause of action. At that date, the time for commencing the action was changed by law to seven years; *Provided,* The act should not operate retrospectively, but from its approval;

O. B. Hart v. W. M. Bostwick and Wife.

that the former statute should control until the expiration of seven years from such approval, and not afterwards. The plaintiffs requested the judge to charge the jury that if they should find " that the deed under which defendant claims color of title bears date prior to the 8th day of January, 1848, the defendants must prove an adverse possession of twenty years in order to constitute a bar under the statute." The court refused the instruction and charged that the statutory period was seven years: *Held*, That the judge ruled correctly in refusing the instruction. If the period of twenty years of adverse possession elapsed before the expiration of seven years from the 8th of January, 1848, the action was barred under the former statute; otherwise, it was barred upon the expiration of seven years after that date. That inchoate rights, depending for their existence upon the statute itself, are subject to be abridged or modified by law, and a statute of limitation may be changed with reference to existing rights, provided a reasonable time is given, after the change and before it would operate as a bar, to exercise the right or to commence suit.

3. A paper purporting to convey a title of real estate, dated July 24, 1823, acknowledging payment of purchase money and signed, but not sealed, did not convey an estate of inheritance. An act regulating conveyances, approved August 31, 1822, declared that no estate of inheritance or freehold for more than two years should be conveyed except by writing, sealed and delivered.

4. If, on an agreement to sell lands, the consideration is paid, and the owner consents that the buyer may enter and hold the land as his own, such entry and possession cannot be deemed subordinate to the title of the seller, but is adverse, and a disseisin.

5. Where one agrees to buy and another to sell land, and the consideration is not paid, and the party contracting to buy enters into possession, inasmuch as the fair inference is that the entry and possession are in subordination to the title of the seller until the stipulated payment is made, such entry and possession are not adverse; and until payment, or until the party in possession repudiates the seller's title and asserts his own, with knowledge of such assertion brought home to the seller, the statute of limitations does not begin to run.

6. An order of the Judge of the County Court, dated March 12th, 1828, revoking letters and removing one from the office of administrator " for maladministration practiced by the administrator," was offered in evidence and objected to on the ground that the revocation was made for causes other than those provided by statute: *Held*, That as the order was duly entered of record and not reversed or set aside, it was operative, although granted irregularly or upon insufficient grounds, and was properly received in evidence for the purpose of showing such revocation and removal.

O. B. Hart v. W. M. Bostwick and Wife.

7. A "difficult and extraordinary case," within the meaning of Section 254 of the Code, to authorize a further allowance of costs, must be a case beset by more than the ordinary difficulties of litigation and necessarily justifying or requiring more than ordinary expenditures of money and labor. Before making an order for a further allowance, the court should determine judicially upon facts presented that the case is "difficult and extraordinary," and this being determined, it is within the discretion of the court to make the further allowance or not. The amount allowed should not exceed a sum, to be ascertained upon facts appearing on the application, to be necessary to indemnify the prevailing party for his expenses in the action, and cannot exceed five per cent. upon the amount of the recovery or claim or subject matter involved.

8. An order making a further allowance in the nature of costs to the prevailing party may be reviewed upon appeal from the judgment entered therefor, for the purpose of ascertaining whether the case is one in which such allowance may lawfully be made, and whether the sum allowed is within that authorized by law; but the Supreme Court will not interfere with the exercise of discretion in making the order for such allowance, or as to the amount allowed, unless it exceeds the amount authorized by law.

This is an appeal from the Fourth Judicial Circuit—Duval County.

The complaint alleges that plaintiffs are the owners of 640 acres of land near Jacksonville ; that defendants are in possession and withhold the possession ; demand judgment for the possession, $10,000 damages and costs.

1. The answer denies that plaintiffs are the owners or entitled to the possession.

2. Defendants allege that the action was not instituted within seven years next after the cause of action accrued, excluding in the computation of said seven years the period of time between the 10th of January, 1861, and the 25th of October, 1865.

The plaintiffs demurred to the second defence set up in the answer for insufficiency, in not stating facts sufficient to constitute a defence, which demurrer was overruled by the court.

The plaintiffs then replied to the answer as follows :

O. B. Hart v. W. M. Bostwick and Wife.

1. That the said pretended adverse possession of the defendants commenced, if at all, prior to the 8th day of January, 1848, and did not continue twenty years, exclusive of the period from the 10th day of January, 1861, to the 25th day of October, 1865, as required by the act of November 10th, 1828.

2. That Thomas G. Saunders, under whom defendants claim color of title to said lands, entered upon the same under a contract of sale with plaintiff's ancestor, Isaiah D. Hart, now deceased, which was never executed, and the defendants claiming under said Saunders are thereby estopped from setting up a possession adverse to that of the plaintiffs.

The defendants then moved the court to strike out the reply of the plaintiffs, on the ground that the matters therein are improperly pleaded.

This motion was granted and the cause was tried before a jury.

Plaintiffs offered in evidence the following deeds : Isaiah D. Hart, Administrator ex officio of William G. Dawson, deceased, to John Warren, his heirs and assigns, dated February 3, 1829, recorded on the same day ; John Warren to Isaiah D. Hart, his heirs and assigns, dated 25th October, 1829, recorded on the same day. These deeds were received and given in evidence to the jury.

Plaintiffs also offered a deed from Francis Richard, Administrator of John R. Hogans, deceased, to Isaiah D. Hart, dated October 13, 1831, and recorded the same day, which was objected to by the defendants and the objection sustained ; but was again offered by plaintiffs, after the closing of defendants' testimony, and read without objection. This is a deed of " bargain, sale and quit-claim " to I. D. Hart, without naming his heirs or assigns, and has this memorandum at the bottom, after the names of the witnesses : " N. B:—The above tract of land was conveyed by John R. Hogans, deceased, by a deed bearing date the 24th July, 1823,

to William G. Dawson, from whom I. D. Hart claims title. (Signed) F. RICHARD. [L. S.]"

The plaintiffs also offered in evidence, for the purpose of showing title in William G. Dawson, a paper purporting to be a conveyance of the property in question, signed by Jno. R. Hogans, whereby, in consideration of twenty-five dollars paid, he did "bargain, sell and quit claim unto William G. Dawson, and to his heirs and assigns forever, all my right, title, interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy, of, in and to" the lands described, and concludes thus : " In witness whereof, I have set my hand *and seal* this 24th day of July, 1823 ;" signed by John R. Hogans, but without seal, and attested by one witness. It was not proved or acknowledged, but was recorded February 3, 1829. Objection being made by the defendants' counsel, the paper was rejected by the court, and the ruling of the court excepted to by plaintiffs. (After the defendants had introduced their testimony and rested, this paper was again offered by plaintiffs as a contract of sale, which was executed by F. Richard, Administrator of John R. Hogans, by a deed executed by him to Isaiah D. Hart. Under objection by defendants, the court refused to receive the paper in evidence, which ruling was excepted to by plaintiffs.)

It was agreed and admitted by the parties that the plaintiffs were the devisees under the will of I. D. Hart, deceased, and that the defendants were in possession of the lands in controversy.

George Wingate testified in behalf of the plaintiffs that he rented the premises from I. D. Hart early in 1846, and Hart put him in possession, and about three months afterwards, Hart told him that he had sold the land and wanted to give possession ; that he did not give the name of the purchaser, but a man by the name of Saunders went into possession shortly after and lived there.

This is the substance of the case made by the plaintiffs.

The defendants introduced a certified copy of a deed exe-cuted by Thomas G. Saunders and wife to Adeline Jones, dated September 9, 1847, describing the land in question. Also, a deed of Thomas W. Jones and Adeline, his wife, to E. A. DeCottes, dated August 4th, 1849, covering fifty acres, together with a map of the whole tract. Also, testimony to show that Eliza Bostwick, one of the defendants, was the daughter and heir-at-law of Thomas W. Jones and Adeline Jones. Also, a certified copy of letters granted by the Court of Probate of Duval county to Washington N. Dawson, as Administrator of the estate of William G. Dawson, deceased, dated November 30, 1826. This was objected to on the ground that the defendants' testimony shows that they claim to derive title under Isaiah D. Hart, and therefore they cannot introduce testimony the object of which is to attack the title of said Hart. Defendants deny that they claim to derive their title under Hart. The court admitted the evidence and plaintiffs excepted.

Defendants also introduced Volume 3, United States Statutes at large, containing the act of Congress authorizing the appointment of three commissioners to examine and decide upon claims to lands, in pursuance of Article IX of the Treaty with Spain. Defendants also offered Volume 4, American State Papers, (717) to show that the commissioners reported favorably upon the claim of John R. Hogans to 640 acres under the Donation Act. This was objected to, but received by the court and exception noted. Defendants also offered the United States Statutes at large, Volume 4, Chapter 9, (202) confirming the report of the commissioners. Objected to, but received by the court and excepted to by plaintiffs. Further oral testimony was introduced by defendants, and they rested their case.

The plaintiffs then resumed, and offered in rebuttal a certified copy of an order of the Judge of the County Court of Duval county, dated March 12, 1828, revoking the letters granted to Washington N. Dawson, as Administrator

of the estate of William G. Dawson, deceased, "for maladministration practiced by the administrator," &c. The defendants' counsel objected to the introduction of the paper, and the court overruled the objection and received the evidence. Excepted to by defendants. Plaintiffs introduced an order of the Probate Court directing the clerk to make sale of the real estate of William G. Dawson to pay debts, &c., dated November 17, 1828. This was objected to, but received in evidence by the court, to which ruling defendants excepted. The plaintiffs then offered the paper before mentioned, signed by John R. Hogans, purporting to convey the premises (but without seal) to William G. Dawson, which was rejected by the court, as above stated. Also, the deed of F. Richard, Administrator of Hogans, to I. D. Hart, before referred to, and the same was read in evidence.

The cause was then submitted.

The court charged the jury as follows: This is an action brought by Hart to recover a tract of land known as the Hogans' Tract. To which action an answer has been filed and the plea of the statute of limitations.

To entitle the plaintiff to recover, he must show good title in himself, and cannot rely upon the weakness of his opponent's.

If the defendant was in adverse possession, and controlled the premises, he has constructive possession until evicted by law or dispossessed by the parties.

If the statute of limitations commenced running, you are to deduct from 10th January, 1861, to October 25th, 1865, then and there add the period it ran before 10th January, 1861, to it, and if you find seven years peaceable possession, undisputed under color of title, you will find for defendant. T. T. Long, Judge.

Plaintiffs excepted to the charge.

Counsel for the respective parties submitted to the court written instructions, to be given to the jury, which are noticed in the opinion of the court.

A verdict was rendered for defendants. The court refused a new trial, and plaintiffs appealed. Errors assigned by the appellants :

1. That the court erred in overruling the demurrer.

2. In refusing to allow the bill of sale or deed from John R. Hogans to William G. Dawson to be read in evidence.

3. In allowing the appointment of Washington N. Dawson, as Administrator of the estate of William G. Dawson, to be read in evidence.

4. In other rulings on the testimony against plaintiffs.

5. In the second and third charges to the jury.

6. In charging the jury, as requested by defendants' counsel, in charges numbered 1 to 13 inclusive.

7. In refusing to give the charges numbered 1, 3, 4, 6, 7, 11, 13, 14, respectively, as asked for by plaintiffs' counsel, and in giving the said charges as modified by the court.

8. In refusing to grant the motion for a new trial.

9. In granting the additional allowance of costs under Section 254 of the Code.

10. In the amount of the allowance so made.

*Fleming & Daniel* for Appellants.

*E. M. L'Engle* for Respondents.

RANDALL, C. J., delivered the opinion of the court.

This was an action commenced by the appellants to recover the possession of certain lands. The appellants assign, for error, first, that the court overruled their demurrer to the second ground of defence set up in the defendants' answer, which alleged that the action " was not instituted within seven years next after the said cause of action accrued, excluding the period of time between the tenth day of January, A. D. 1861, and the 25th day of October, 1865." The plaintiffs demurred to this portion of the answer for insufficiency,

and the court overruled the demurrer. The plaintiffs then filed a replication to the answer which was struck out by the court. The effect of the replication was that the plaintiffs abandoned all benefit of exception to the judgment over-ruling the demurrer, and therefore they cannot assign this for error. The Judge, however, in his charge instructed the jury in effect that the matter set up in the answer in this respect constituted a defence, and the plaintiffs having ex-cepted to the charge and assigned it as error, it will be con-sidered first.

According to the form of this answer, the term of seven years is comprised of a period of time prior to January 10, 1861, together with a term subsequent to October 25, 1865, and the question is presented whether there is, or has been since October 26, 1865, a statute in force limiting the time for the commencing of civil actions.

It is evident that the pleader had in his mind in framing this answer the third section of Article XV of the Consti-tution of 1868, which provides " that all laws of the State passed by the so-called General Assembly since the 10th day of January. A. D. 1861, not conflicting with the word or spirit of the Constitution and laws of the United States, or with this Constitution, shall be valid. * *, * * Provided, that unless otherwise provided in this Constitu-tion, the statute of limitations shall not be pleaded upon any *claim* in the hands of any person for the period of time be-tween the 10th day of January, 1861, and the 25th day of October, 1865, whether proceedings at law had been com-menced before the 25th day of October, 1865, or not."— Whether this provision of the Constitution is applicable to the present case or not, the defendants do not claim the benefit of the time between the dates mentioned in the an-swer ; but they do claim that the period of time since the 25th of October, 1865, should be computed, and that by in-cluding this period, the full term of seven years has elapsed since the plaintiffs' cause of action accrued, and that therefore

the action is barred under the first and second sections of "an act to amend the several acts concerning the limitation of actions," approved January 8, 1848.

If any statute limiting the time for the commencement of civil actions was in operation after the 25th day of October, 1865, it was proper to compute the time elapsed since that period, but if there was no such statute in force this time should not be computed.

The act of 1848 (chapter 142) provided that an action for the recovery or possession of real estate shall be brought within seven years next after the right or title thereto, or cause of such action shall accrue, and not afterwards.

The third section of an act providing for the stay of executions, approved Dec. 13, 1861, (chapter 1271,) says that "the statutes of limitation now in force in this State, in relation to civil actions of every description, be and the same are hereby suspended, and shall have no operation or effect so long as this act may continue in force and unrepealed, reserving all rights and defences under the existing statutes of limitation; *provided, however*, that nothing in this act shall be construed so as to prevent any defendant from pleading said statute or statutes of limitation in any cause wherein the same shall have run before the passage of this act."

It was contended upon the argument that this act of Dec. 13, 1861, had been declared unconstitutional and void in the case of Garlington vs. Priest, (13 Fla. 559,) but it will be seen that that case came under the first section of the act, which related to an entirely different subject. It was deemed that the first section was in conflict with the spirit of the Constitution of the United States, and with the existence of the union of the States, and, therefore, void from the beginning; but there is nothing in the third section making it liable to such objection. It does not follow that because one or more sections of a law may be inoperative or void, the whole act is therefore void, and we cannot so hold in reference to the third section; and as there seems to be no

valid objection to the operation of the latter, it is considered as in force from the time of its, approval to the present, unless it has been repealed. It is urged that it is repealed by the effect of the proviso to the third section of Article XV of the Constitution of 1868, before cited. We do not think so. This clause of the Constitution does not expressly repeal it, nor does it operate as a repeal by implication. It expressly ratifies all laws passed " since the 10th of January, 1861, not conflicting with the word or spirit of the Constitution and laws of the United States or with this Constitution ;" and the proviso enacts that " unless otherwise provided in this Constitution, the statute of limitations shall not be pleaded upon any *claim* in the hands of any person," so as to include the period of time between January 10, 1861, and October 25, 1865. The act of December 13, 1861, refers to the time of commencing " civil actions" of every description. This section of the Constitution relates to pleading the statutes of limitation upon " claims in the hands of any person" from a period *anterior* to the passage of the act of 1861, down to October 25, 1865. Whether this constitutional provision is intended to embrace the claim of title or the possession of real property, it is not necessary here to determine ; but it is certain that the act of December 13, 1861, does embrace it, and suspends the operation of the statutes of limitation with regard to the commencement of all civil actions. This act has not been repealed by any act of the legislature, or by force of the Constitution of 1868, and is therefore in force. Its effect is to prevent parties from pleading the lapse of time, occurring after its approval, as a defence in any civil action, and it saves such defence where the time had fully elapsed before its approval.

The necessary conclusion is, that the second answer of the defendants does not set up a defence under the statute, and that the charge of the court in that respect was erroneous.

2. The second ground of error alleged is that the court refused to allow the bill of sale or deed from John R. Hogans

to Wm. G. Dawson to be read in evidence. From the state-ment of the case it will be seen that this paper, although purporting in terms to convey all the title and interest of Hogans, either in possession or expectancy, and to acknowl-edge payment of the consideration therefor, was without a seal. It was contended that this was a good conveyance under the civil law, as it is claimed that it was executed and delivered before the adoption of the common law in Florida. The date of the paper was July 24, 1823. The common law of England and the statutes in aid thereof, down to the 4th year of James I., were adopted by the Legislature of Florida on the second day of September, 1822, to take effect in East Florida Oct. 1, 1822. (Laws of 1822, p. 53.) Again, the common and statute laws of England were enacted by the Legislature June 29, 1823, by the statute now found in Thompson's Dig., 21. (See laws of 1823, p. 11.) By an act regulating conveyances approved August 31, 1822, (Laws of 1822 p. 49,) it was declared that no estate of inheritance or freehold for a term of more than two years should be con-veyed, " unless the conveyance be declared in writing, *sealed* and delivered." The paper presented lacked a seal and therefore, under the statute, no estate of inheritance passed by the writing alone, and it was properly rejected by the court.

3. The plaintiffs allege that the court erred in allow-ing the appointment of W. N. Dawson as administrator of W. G. Dawson to be read in evidence. This was doubt-less offered for the purpose of showing that the deed offered by the plaintiffs from I. D. Hart, clerk, &c., administrator ex-officio of W. G. Dawson, was without authority of law, because another had been duly appointed. As the grounds of the authority of I. D. Hart, as clerk and ex-officio admin-istrator, had not been shown on the part of the plaintiffs, it was competent for the defendants to show that another was in fact duly authorized and acting as administrator, and hence that Hart as administrator ex-officio had no authority

to convey. For this purpose there was no valid objection to giving the appointment of W. N. Dawson in evidence. After the close of the defendants' testimony, the plaintiffs offered an order of the judge of the county court, dated March 12, 1828, removing W. N. Dawson from the office of administrator of W. G. Dawson, and another order dated November 17, 1828, directing the clerk to make sale of the real estate, &c. These were objected to by defendants' counsel on the ground that the order removing W. N. Dawson, upon the grounds stated, was unauthorized, the grounds being for "mal-administration practised by the administrator," &c., whereas the statute only authorized a removal by the Judge for other causes; and the objection to the second order was, that it was granted before the statute authorizing the clerk to act as administrator ex-officio was passed, to-wit: November 20, 1828.

We are of the opinion that the order removing W. N. Dawson, as administrator, having been entered of record and not subsequently reversed or set aside, although it may have been granted upon insufficient grounds, must stand; and we find by an examination of the laws that the act of the Legislature constituting the clerk administrator ex-offico, in case of a vacancy, (as by revocation of letter, &c.,) being "an act in addition to an act respecting the probate of wills and the granting of letters testamentary and letters of administration, and the duties of executors, administrators and guardians," was approved December 5, 1825, (see Laws 1825, p. 28,) and not in 1828 as was insisted by counsel, and was in force at the time of the granting of the order of sale.

5. The fifth error assigned is that the court erred in his second and third charge to the jury.

The second paragraph of the charge is exceedingly indefinite, and we are unable to determine its effect upon the minds of jurors. The third paragraph referred to, relating to the computation of time under the statute of limitations, has al-

ready been commented upon in considering the first of the errors assigned.

6. The sixth error assigned is that the Judge charged the jury as requested by defendants' counsel in the instructions numbered 1 to 13, inclusive.

It is unnecessary to repeat and notice them in detail. The several propositions of law embraced in them appear to have been collated from approved authorities, excepting such portions as relate to the computation of time in applying the statute of limitations, as already noticed. Beyond this, even if they were not all strictly applicable to the facts of this case, (as was insisted,) we discover in them nothing which tends to embarrass the case or to mislead or confuse a jury.

7. The seventh error assigned is as follows : "The court erred in refusing to give the charges numbered 1, 3, 4, 6, 7, 11, 13 and 14, respectively, as asked for by plaintiffs' counsel, and in giving the said charges as modified by the court."

The several instructions prayed by plaintiffs, here mentioned, are correct, so far as we discover, except as will be presently noticed.

The first proposition was correctly stated by plaintiffs' counsel. The words appended by the court are too indefinite and imperfect to give the jury a clear understanding of the law.

The third proposition was also correct. The words added by the court are not applicable to the proposition, and are not material. However, it is not probable that they had any influence against the plaintiffs.

The fourth instruction prayed was as follows : "If the defendants have failed to prove an actual occupation of a part of the lands in controversy, inclosed by a substantial fence, or in some equally notorious way, continuously and without interruption for the entire period prescribed by the statute of limitations, the *plaintiffs' right of entry* is not barred, and you should find accordingly, and an interval of

a month, a week, or even a day is sufficient to prevent that continuity of possession which is essential to a defence under the statute of limitations." This, as it was preceded and qualified by the suggestion that the jury must first find that the plaintiffs had established their right, should have been given, and the Judge committed an error in refusing this instruction as prayed, and by adding, " If you find that Jones never was in possession, the court charges that the charge asked for is law ; but if you find that Jones was in actual possession, used it, rented or leased, then he is constructively in possession *the whole time.*" This seems to suggest that if " Jones" was *ever* in possession, then he was constructively in possession during the *entire* period of limitation. The views of the Judge are not sufficiently clear and the jury may have been misled.

As to the sixth instruction and the words added to it by the Judge, taken together, it is entirely indefinite and tends to confusion.

The seventh instruction is in substance, that an actual interruption of the possession is fatal to the claim, (of adverse possession,) to which the court added, " if the possession is interrupted by adverse possession it is fatal ;" thus limiting and confining the interruption of the possession of the defendants to an interruption by an actual possession adverse to that of the defendant. It must be seen at a glance that this is not correct. The interruption may have been by abandonment and various other causes, and the lands may not have been occupied at all for a long period, which may have broken the defendants' claim, and deprived the plaintiffs of an antagonist against whom they might have proceeded to enforce their rights.

The 11th instruction prayed by the defendants is as follows : " If you find from the evidence that the party from whom the defendants or their ancestor, Thomas Jones, derived their claim of title, entered upon the lands in controversy, under a contract of sale with the plaintiffs' ancestor,

Isaiah D. Hart, and that said contract is not proven to have been executed, the defendants are estopped from setting up their possession as adverse, and you should find for the plaintiffs."

An adverse possession must be a possession inconsistent with the title of the claimant. If, on an agreement to sell lands, the consideration is *paid*, and the owner consents that the buyer may enter and hold the land as his own, the entry and possession of the buyer cannot be deemed subordinate to the title of the seller, but as adverse and a disseisin. Brown vs. King, 5 Met. Mass., 173 ; Ellison vs. Cathcart, 1 McMullan, S. C., 5 ; Drew vs. Towle, 10 Foster, N. H., 531 ; Paxson vs. Bailey, 17 Ga., 600 ; 12 Texas, 195 ; 1 Sneed, 586 ; 8 Cow., 589 ; 14 Wend., 227 ; 14 Barbour, 441.

But the case is different where one agrees to buy and another agrees to sell land and the consideration is not paid, and the party contracting to buy enters into possession, inasmuch as the fair inference then is, that the entry and possession are in subordination to the title of the party contracting to sell, until the stipulated payment is made. Such a case, therefore, constitutes a tenancy at will, or a trust, rather than a disseisin. Angell on Limitations, Sec. 406, and cases cited above.

In Maryland it has been held that where a contract for the sale of land is proved, and a uniform possession of part under it, length of time is no bar to a specific performance being decreed. Somerville vs. Trueman, 4 Har. and McHen., 43 ; also 18 Vermont, 229 ; 3 McLean, (U. S.,) 457 ; 1 Harr. Del., 336.

In New York, a lapse of thirty years or, it seems of twenty years, will authorize a jury to presume a deed from the original vendor. (4 Barbour, 566.) In Georgia, where there was a bond for a deed on payment of the purchase money, the possession of the purchaser was held to be adverse. Fain vs. Cartwright, 5 Geo., 6. That suit was in behalf of a third party, a stranger to the contract. An entry by one on the

land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done ; if made under claim or color of right adverse to the legal title, it is an ouster ; the intention guides the entry and fixes its character. The doctrine of adverse possession is to be taken strictly and not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner. An entry adverse to the lawful owner is not to be presumed, but must be proved. Tyler on Eject., 875, citing 1 Johns. 156 ; 9 ib., 163 ; 3 Johns. Cases, 124 ; 2 Bibb's R., 507 ; 1 Marsh., 62.

One of the cardinal rules which apply to acts of limitation generally, and which has been recognized in the courts of England and in all others where the rules established in those courts have been adopted, is, that possession, to give title, must be adversary, and it cannot be adversary unless it is hostile to the true title. To allow a different construction, (says Ch. J. Marshall,) would be to make the statute of limitations a statute for the encouragement of fraud—a statute to enable one man to steal the title by professing to hold under it. No laws admit of such construction. Kirk vs. Smith, 9 Wheat., 241 ; Jackson vs. Birner, 48 Ill., 203. In all cases where a party is in possession of lands in privity with the rightful owners, nothing short of an open and explicit disavowal and disclaimer of holding under that title, and assertion of title in himself, brought home to the owner, will satisfy the law. Short of this, the party will be regarded as holding in subserviency to the righful title. Floyd vs. Mintsey, 7 Rich., 181. In Williams vs. Cash, 27 Ga., 507, the court say : " If the defendant entered under a contract of any sort for a title, the statute of limitations could not begin to run in his favor until he repudiated the contract and claimed to hold in defiance of the plaintiff's title and the plaintiff's knowledge of such adverse holding." The statute, therefore, does not begin to operate until the posses-

sion, before consistent with the title of the real owner, become tortious and wrongful by the disloyal acts of the tenant, which must be open, continued, and notorious, so as to preclude all doubt as to the character of the holding or the want of knowledge on the part of the owner. If he then neglect to enforce his right by action within the period fixed by statute, the loss, as in every other case of the kind, is attributable to his own laches, and not to the law. Tyler, 877. Where one makes a contract to have a deed, though he enter into possession of the land described by it, he is not in a situation to hold adversely, until the condition upon which he contracts to have his deed is fulfilled, for the simple reason that such a possession is not hostile in its inception. He enters, necessarily subject to the right of the owner to turn him off, if he neglects to make full payment. The possession, therefore, when taken, had not the characteristics to constitute it adverse. It was not hostile. Jackson vs. Camp, 1 Cow., 605 ; Woods vs. Dille, 11 Ohio, 455.

A possession and claim of land, under an executory contract of purchase, is in no sense adverse as to the one with whom the contract is made. But it seems that when one enters under a contract for a deed with one party, and afterwards takes a deed from another party, his possession from this time is adverse to the first vendor, and if continued, the statutory period will bar his entry. Jackson vs. Johnson, 5 Cow., 74.

An agreement for a conveyance, the consideration being paid, has been held to be tantamount to a deed as a foundation for an adverse possession, (La Frombois vs. Jackson, 8 Cow., 589,) and one entering under an executory contract of purchase may always hold adversely, as against all persons but his vendor. Whitney vs. Wright, 15 Wend., 171 ; Adams vs. Guerard, 29 Ga., 651 ; 8 Cow., 589 ; 15 Wend., 381 ; 9 Cow., 550 ; 5 Cow., 74 ; 14 Wend., 228 ; 1 Cow., 605.

In the light of authority we must hold that the 11th in-

struction prayed by the plaintiffs should have been given, and that the court in refusing so to charge committed an error. Whether the evidence in the case was of such a character that the proposition was applicable or material, we will not determine, as the judgment must be reversed upon other grounds. We treat the question as an abstract proposition, and it receives attention because it is included in the assignment of errors, and was deemed by counsel for appellants as one of importance in the case.

The thirteenth instruction prayed by the plaintiffs is as follows : "If you find from the evidence that the deed under which the defendants claim color of title bears date prior to the 8th day of January, 1848, the defendants must prove adverse possession of twenty years, in order to constitute a bar under the statute of limitations." This was refused as prayed, and the court instructed the jury that " the statutory bar is seven years."

The plaintiffs insist that the statute of January 8, 1848, is not applicable, because the adverse possession commenced, if at all, before the passage of that act, and that, therefore, the adverse possession of twenty years is necessary to be shown by the defendants in order to defeat a recovery against them.

The statute of 1848, limiting the time for the commencement of a suit for the recovery of the possession of lands to seven years from the time the cause of action accrued, provides that the act shall not operate retrospectively, but that it shall commence running from the date of its approval ; that the former statute should control until the expiration of seven years from the approval of the act, and not afterwards.

The authorities seem fully to establish the rule that where mere inchoate rights are concerned, depending for their original existence on the law itself, they are subject to be abridged or modified by law, and that statutes of this character apply to such rights existing at the time of their

O. B. Hart v. W. M. Bostwick and. Wife.

passage, provided a reasonable time is given after the passage of the act, and before it would operate as a bar, for the party to exercise the right. This is sustained in DeCordova vs. the city of Galveston, 4 Tex., 470 ; Winston vs. McCormick, 1 Carter, (Ind.,) 56 ; Gilman vs. Cutts, 3 Foster, (N. H.,) 376 ; Willard vs. Harvey, 4 ib., 344 ; Smith vs. Morrison, 22 Pick., 430 ; Butler vs. Palmer, 1 Hill, 324 ; Smith vs. Packard, 12 Wis., 371. In the present case, the law as understood by us is this : If the defendants' adverse possession, and that of their grantor or ancestor, of twenty years was complete before the expiration of seven years from the passage of the law of 1848, the action was thereby barred ; if it did not expire before the expiration of the seven years from the passage of that act, then their possession, if adverse to the plaintiffs and their ancestor, for the period of seven years since that act was passed and prior to the 13th December, 1861, when the acts of limitation were suspended, entitles them to plead the statutory limitation of seven years.

As to the fourteenth instruction prayed by plaintiffs, we do not see that the jury could have been misled, or that the plaintiffs' case could have been prejudiced by the modification made by the judge, and it cannot therefore be deemed error that the modification was made.

As to many of the questions which we have found it necessary to examine, (because they are suggested by the assignment of errors,) it will be noticed that they are not presented at length in this opinion. To have done so would have unnecessarily enlarged its bulk without corresponding advantage, because the questions alluded to involve settled principles of law, and the present rulings upon them are made only for the purpose of disposing of all the points raised in this case.

A further question is suggested by the record and by the assignment of errors, relating to the additional allowance of costs. The Judge, after the trial of the issues and the ren-

dition of the verdict, made an order to the effect that an additional allowance should be made to the defendants, who recovered judgment, and for the purpose of estimating such amount, took proof as to the value of the property in controversy, and as to that question only, and allowed the sum of eight hundred dollars.

The respondent declined to argue the question before this court.

Section 247 of the Code is as follows : " There may be allowed to the prevailing party, upon the judgment, certain sums by way of *indemnity for his expenses in the action*, which allowances are in this act termed costs." By Sections 248 and 249, costs are allowed of course to the prevailing party in an action for the recovery of real property. By the last paragraph of Section 254, it is provided that in difficult and extraordinary cases, where a defense has been interposed, or where a trial has been had, the court may, in its discretion, make a further allowance to any party, *not exceeding* five per cent. upon the amount of the recovery or claim, or subject matter involved.

It is noticed that the amount of such allowance, not exceeding a certain limit, or the making of any allowance at all, in the class of cases referred to, is in the discretion of the court. The question then arises, When, and in what circumstances, is this discretion to be exercised ? Whatever order may be made by the court in the exercise of a pure discretion is, of course, not subject to be reviewed, and in answering this interrogatory we determine how far this court may review upon appeal an order making an additional allowance of costs.

By Section 253 of the Code, a class of cases, and the amount of allowances which may be made in these cases, is too well defined to require comment. Those cases are : 1. Actions for the partition of real property ; 2. For the foreclosure of mortgages ; 3. Actions in which a warrant of attachment has been issued ; 4. An adjudication upon a will

or other instrument in writing ; 5. In proceedings to compel the determination of claims to real property. In these cases the amount to be allowed is limited by a certain percentage. The case before us is not one of those cases, it being an action to recover possession of real property, and no " additional allowance" can be made in this case unless it be a " difficult and extraordinary case."

An action to recover possession of real property is not necessarily a difficult and extraordinary case, whether the amount or value of the property involved be great or small. More intricate questions may arise and greater labor and expense may be necessarily required to be bestowed in an action to recover a square foot of land, than in an action to recover real property of greater dimensions and worth a larger sum of money. Whether the case be "difficult and extraordinary," then, is not determined by the form of action or the amount involved. This is rendered more clear, if necessary, by the provision that the allowance may be made only in the event that a defence has been interposed or a trial has been had. Hogeboom, J., in The People vs. The N. Y. C. R. R. Co., 29 N. Y., 429, well says : " The case is difficult and extraordinary within the meaning of the Code. The character and magnitude of the claim, the importance of the interests involved, the length of time it has occupied, and the severity with which it has been contested, bring it fairly within the purview of the section. The case was, therefore, one in which the judge had jurisdiction to act."

In The People vs. Clark, 11 Barb., 343, the court says upon this point : " It was a case not within the range of common professional experience and research. It justified, if it did not require, on the part of the defendant, a consultation with the wisest and most experienced counsel. It therefore involved the necessity for large disbursements for legal assistance."

It will be noticed that one of the grounds to be established

preliminary to the exercise of the discretion of the judge in making the allowance, was the *necessity* for making large expenditures for the protection of the rights of the party. This is undoubtedly a case which is contemplated by the terms difficult and extraordinary, especially in view of section 247, which serves as a preamble to the whole question of costs, and declares that the allowances are made "by way of *indemnity* for his expenses in the action." To impose upon the failing party the payment of a sum of money greater than is necessary to indemnify the prevailing party, would be a punitive judgment, clearly not within the purpose of the law. Costs are recoverable solely upon the principle of indemnity.

The conclusion is, therefore, that the court must be satisfied, before an extra allowance can be made, that the case is a "difficult and extraordinary" one; a case beset with more than the ordinary difficulties of litigation, and necessarily justifying or requiring more than ordinary expenditures of money and labor; and this is a question of fact which must be determined upon such evidence as may be sufficient to satisfy the court, and this determination should appear of record. This is not a matter of discretion, but of judicial judgment. This being determined, the court may exercise its discretion as to making the further allowance, which may be an amount not exceeding five per cent. upon the value of the recovery or of the subject matter involved, but also not exceeding an amount *necessary to indemnify* the party for his expenses in the action, which amount may be ascertained summarily upon evidence satisfactory to the court. "There is no doubt, (says Johnson, J., in The People vs. N. Y. C. R. R. Co., 29 N. Y.) that it is strictly a matter of law when the judge making the allowance undertakes to give the prevailing party any sum beyond what is necessary to indemnify such party for his expenses in the action, upon the facts appearing on the application."

Is an order making a "further allowance" subject to re-

O. B. Hart v. W. M. Bostwick and Wife.

view upon appeal? In making such allowance there is necessarily an order of the court to that effect, and this order is an " intermediate order "—one made after the trial and before judgment, the costs recovered entering into and forming a part of the final judgment.

An appeal may be taken (Code, sec. 10, sub. 1,) from a judgment of the Circuit Court in an action, and upon the appeal the court may " review any intermediate order involving the merits and necessarily affecting the rights of the parties."

This intermediate order making a further allowance may not involve the merits of the subject matter of the action, the title or right of possession of the real estate in controversy, although the making of the order involves an examination and consideration of the character of the action and of the proceedings had therein. It does, however, involve the merits of the application for the allowance upon which the judgment is rendered, and from which judgment the appeal is taken. The judgment is, first, upon the verdict, and, second, upon certain facts it awards a sum of money to reimburse the prevailing party. It involves the jurisdiction of the court to make the order, the power to be exercised only, as we have seen, in certain cases and upon a certain state of facts.

The order also necessarily " affects the rights of the parties," not to the possession of the property in controversy, but the right of the prevailing party to recover a sum of money from the other. Ch. J. Denio, in delivering the opinion of the court in the case of the N. Y. C. R. R. Co. before referred to, remarks that " an order which peremptorily and finally charges a party with the payment of a sum of money, great or small, which he ought not to pay, or with a greater amount than he ought to pay, affects his rights, not in a matter of form, but in substance ; and such was the nature of the order in this case."

O. B. Hart v. W. M. Bostwick and Wife.

Any other interpretation of the clause referred to would place an unauthorized order or judgment, however illegal or oppressive, beyond the reach of review or supervision by the appellate courts. Section 10 commences thus : " The Supreme Court shall have jurisdiction to review upon appeal every actual determination made by the Circuit Court, in all cases," &c. The writ of error is prohibited by the Code, and an appeal substituted therefor.

If the first sub-division of the section does not allow this court to review the " merits" of a proceeding which forms the basis of a part of the judgment, it amounts to a denial of justice and may place the grossest errors, the most flagrant violation of private rights, and abuse of public justice, beyond the reach of a corrective. We are satisfied that this was not the design of the law, and we must interpret it with reference to its evident intent in the furtherance of justice. So far as relates to the power of the Circuit Court to make the order for an additional allowance, to the law and the facts necessary to give such power, to the limitation as to the amount of such allowance, the order is a proper subject of review upon appeal. So far as relates to the exercise of discretion, as to whether the court will allow or refuse such additional costs in a proper case and the amount proper to be allowed, within the prescribed limits, it will not be disturbed.

In the case before us, the grounds upon which the order for additional allowance was made do not appear, neither does it appear that the amount of such allowance was within the amount necessary to indemnify the defendant for his expenses in the suit. These matters ought to appear in the record in order to support the judgment.

For the reasons stated, the judgment of the Circuit Court is reversed and a new trial awarded, and this cause will be remanded with leave to the parties to amend their pleadings, as they may be advised, and for such other and further proceedings as may be had according to law.